J. W. SEDERQUIST, Appellant, v. ETHEL L. PETERSON et al.,
Appellees.

**HUSBAND AND WIFE:** Marriage Settlement—Construction of Ante
1    **nuptial Contract.** Antenuptial contract construed in connection with certain conveyances, and held to grant to the intended wife certain property absolutely, notwithstanding somewhat ambiguous clauses relative to the survivorship of the wife.

**DEEDS:** Delivery—Presumption. A rebuttable presumption of delivery
2    attends the recording of a deed promptly following its execution.

*Appeal from Montgomery District Court.*—E. B. WOODRUFF,
Judge.

DECEMBER 15, 1922.

ACTION in equity, to quiet title. The court below found plaintiff to be the owner of a one-third interest in the property, instead of the title to the whole, and he appeals.—*Affirmed.*

*Ralph Pringle* and *Wenstrand & Powell,* for appellant.

*P. W. Richards* and *Frysinger Evans,* for appellees.

STEVENS, C. J.—This is an action in the name of the sole

surviving heir of P. A. Sederquist, deceased, who died intestate, to quiet title to certain real property located in Montgomery County, Iowa, and involves the construction of an antenuptial contract entered into by deceased and Mrs. Betsey Peterson on March 16, 1919, in pursuance of which they became husband. and wife. The provisions of the contract material to this controversy are as follows:

1. HUSBAND AND WIFE: marriage settlement: construction of antenuptial contract.

"2nd: In consideration of the agreements and stipulations hereinafter set forth on the part of the said Mrs. Betsey Peterson, party of the second part, I, P. A. Sederquist, party of the first part, do hereby agree and bind myself, my heirs, administrators, executors, and assigns, that at my death the said Mrs. Betsey Peterson, party of the second part, shall have as her property a life estate for and during the natural life of the said Mrs. Betsey Peterson, which shall continue as long as she shall live, unless she should remarry, and in that event her said life estate shall, upon her remarriage, cease, with remainder over; said life estate consisting of and being the rents and profits of all the property, real, personal, and mixed, of which I shall die seized after the payment of my debts. And I further give her, and by these presents do bind my heirs, administrators, executors, and assigns, in fee simple, and she shall have an absolute title to the north half of the northeast quarter and the north eight of the south half of the northeast quarter of Section twenty-seven (27), Township seventy-one (71) north, Range thirty-eight (38) West of the 5th Principal Meridian, being ninety (90) acres, more or less, according to the government survey, and also the north one hundred and twenty (120) feet of Sublot one (1) of Lot six (6) of the north half of the northwest quarter of the northeast quarter of Section twenty-eight (28), Township seventy-two (72) north, Range thirty-eight (38), west of the 5th Principal Meridian, which is hereby given to the second party and is accepted by her in lieu and stead of any dower, rights of inheritance, homestead, or any interest whatsoever kind and nature that now or hereafter may exist under and by virtue of the laws of the state of Iowa, or that may exist at the time of my decease by virtue of any law or laws of the state of Iowa relating to husband and wife, inheritance,

or any of the marital relations in my estate, the same to be in full of all interest that she may or might have or claim at the time of my decease in my estate if this agreement had not been made. * * * And I further agree that said first party shall have full and complete control and management of all his property and estate during his lifetime. It is agreed that, should second party die before the first party, then and in that case the rights of life estate hereinbefore set forth in favor of the second party shall cease and revert to and become the property of the first party, and the right and title to the same shall be in him, the same as if this agreement was never made, and he shall be relieved from such obligation under this agreement. The right and title to such life estate as going to said second party shall not vest in second party until the death of first party, and shall cease at the death of the said second party or at the remarriage of said second party.''

The plaintiff is the son of P. A. Sederquist by a former marriage, and the defendants are the surviving heirs of Mrs. Betsey Peterson by a former marriage. At the time the contract was entered into, P. A. Sederquist owned the homestead in Red Oak which is involved in this controversy, and Mrs. Peterson owned an undivided one-third interest in the homestead of her former husband, and in 200 acres of land in Montgomery County. On the same day that the antenuptial contract was signed, P. A. Sederquist executed a warranty deed conveying to Mrs. Peterson the property described in Paragraph 2 of the contract, for an expressed consideration of $1.00 and other valuable consideration. Both instruments were duly acknowledged on March 16th and filed for record in the office of the county recorder of Montgomery County, March 22, 1909. P. A. Sederquist, at the time of the marriage, was 66 years of age, and in feeble health. Mrs. Peterson was a few years younger, and in good health. Mrs. Sederquist predeceased her husband.

It is the contention of counsel for appellant that the contract and deed, having been executed on the same day and as a part of the same transaction, must be construed together, for the purpose of ascertaining the intention of the parties, and that, when they are so construed, it is clear that Mrs. Sederquist

was to have no interest in the estate of her husband unless she survived him. The contract, as we view it, will not bear this construction. P. A. Sederquist specifically agreed to give his prospective wife the homestead owned by him in Red Oak, and

2. DEEDS: delivery: presumption. 90 acres of land described in the contract. This promise and agreement were consummated by the execution of a warranty deed, without condition or reservation. Some suggestion is made by counsel that the evidence fails to show a delivery of the deed. Delivery will be presumed from the prompt recording thereof. *Stiles v. Breed,* 151 Iowa 86; *Tucker v. Glew,* 158 Iowa 231; *Witt v. Witt,* 174 Iowa 173.

The provision in the contract for the termination of the life estate, which by its terms is given to Mrs. Peterson so long as she remained the widow of her deceased husband, makes no reference, directly or indirectly, to the deed or the real estate conveyed thereby to Mrs. Peterson. The deed is absolute in form, and the language of the contract would seem to leave no doubt that the conveyance of a fee-simple title was intended by the parties. It is true that the purpose of the antenuptial contract was to settle and adjust the interest Mrs. Peterson would have in the estate of her prospective husband, in the event she survived him; but that was not the sole purpose thereof. It was a contract of marriage, and a part of the consideration therefor was the conveyance by Sederquist to Mrs. Peterson of the real estate described therein. The contract does not fix the interest which Sederquist should have in the property of Mrs. Peterson if he survived her. The evidence shows, however, that she sold her interest in the farm and city property, and that Sederquist received no part of the proceeds of the farm. The record is silent as to what became of the proceeds of the sale of the city property. After the marriage, the parties resided in the residence property conveyed to Mrs. Peterson. Sederquist continued to manage the 90-acre farm, to pay the taxes thereon, and to lease it and collect the rents. Mrs. Sederquist apparently assumed no control over the leasing or management of the farm, but she appears to have paid at least one special assessment against the residence property, and an occasional controversy arose between the parties as to who should pay for repairs upon

the property.   These differences were always settled by Sederquist's paying the bill.   Evidently, the parties interpreted the provision of the contract giving Sederquist full and complete control and management of all his property as applying to the 90-acre tract, as well as to other lands owned by him.   On a few occasions, Sederquist admitted that he had given the 90 acres and city property to his wife, and after her death stated to a neighbor that he had a one-third interest in both of said properties.

Further discussion of the evidence is unnecessary.   The conclusion that P. A. Sederquist intended to vest an absolute title in Mrs. Peterson to the land described in the contract, and that her right thereto was not to depend upon survivorship, would seem to be the only reasonable one.   The failure of Mrs. Sederquist to assume control of the farm is not inconsistent with the claim now asserted by her heirs.   The contract seems to have contemplated that her husband should retain the management and control thereof.   Whether the contract was a provident one, is not a matter of our concern.   Although a guardian was subsequently appointed for Sederquist, the evidence wholly fails to show that he was not competent to enter into the contract in controversy.   The decree of the court below is right, and is, therefore,—*Affirmed.*

EVANS, ARTHUR, and FAVILLE, JJ., concur.