LILLIAN H. BURCH, Appellant, v. MARY M. NICHOLSON ET AL., Appellants, and JOSHUA MURPHY, Defending by Guardian, Appellee.

**Conveyances:** DELIVERY: PRESUMPTION: ACCEPTANCE: BURDEN OF PROOF.
1 A duly executed and recorded deed is presumed to have been delivered, and this presumption can not be overcome except by clear and satisfactory evidence. The mere fact that the grantee was of unsound mind at the time of recording will not of itself negative delivery. And where the instrument recites a paid consideration, and imposes no duty or obligation on the grantee, it is presumptively beneficial to him, and proof of acceptance is unnecessary.

**Same:** DECLARATIONS OF FORMER OWNER: ADMISSIBILITY. Where an
2 adult son, to whom his mother had conveyed her farm, lived with her on the land and cultivated it, her declaration that she regarded the son, who had been confined in the hospital for the insane, as capable of accepting the deed and that she advised him of its execution, were admissible against her heirs when attacking the validity of the deed; but such declarations, so far as tending to negative the intent to be presumed from recording the deed, were incompetent; the son being insane at the time of suit.

**Same:** PRESENT TITLE: VALIDITY: EVIDENCE. The title to property
3 conveyed can not be defeated by failure to pay a remaining por-

tion of the consideration. Nor are the declarations of a deceased grantor admissible for the purpose of attaching a parol condition to a deed, thus destroying its validity.

**Same.** The presumption of delivery arising from the recording of a deed can not be overcome by evidence that the grantor was advised against its delivery until the price was paid; or by subsequent declarations to the grantee that he was not to have the deed until he had performed certain conditions.

**Same:** INSANE GRANTOR: GOOD FAITH PURCHASER: NOTICE. Where a previous grantor had not been adjudged insane, an executed conveyance by him for value will not be set aside, as against a subsequent good faith purchaser without notice, where the subsequent purchaser can not be put in *statu quo.*

**Same:** SALE OF MINOR'S INTEREST: VALIDITY: LIMITATIONS. Where the guardianship proceedings for the sale of a minor's interest in land were admitted to be regular and that proper notice was given, the minor can not question the regularity after the expiration of the statutory period limiting a right of action in such cases.

**Same:** TRUSTS: EVIDENCE. The heirs to the estate of their deceased father, who conveyed their interests to their mother, since deceased, for the purpose of facilitating a settlement of the estate, are incompetent witnesses for the purpose of establishing a trust in the mother, pursuant to an alleged agreement on her part to pay the debts of the estate and hold the balance for their benefit; and such a trust can only be established by clear and satisfactory evidence. Inadequacy of consideration for the conveyances is not ground for setting them aside or declaring a trust.

**Same.** An express trust in land can not be established by parol proof; it must be in writing duly signed and acknowledged in conformity with the statute.

**Fraudulent conveyances:** CONFIDENTIAL RELATIONS. To set aside conveyances from children to their parent on the ground of fraud, it must appear that the grantors were led by fraudulent practices into parting with their title; as the relationship alone is not sufficient to render the conveyances presumptively fraudulent.

**Same:** LIMITATIONS. To set aside a conveyance on the ground of fraud the action must be brought within five years after discovery of the fraud; and the recording of a conveyance in violation of an alleged agreement to hold the property in trust is such notice to the claimed beneficiaries as will set the statute in motion. And the fact that the beneficiaries may have thought

that, in view of the relationship of the parties, they would ulti-
mately receive the property, would not excuse a failure to insti-
tute the action within the statutory period.

Evans and Sherwin, JJ., dissenting. ·

*Appeal from Calhoun District Court.*—HON. F. M. POW-
ERS, Judge.

THURSDAY, OCTOBER 24, 1912.

ACTION to quiet title in plaintiff to an undivided in-
terest as tenant in common in a quarter section of land, title
to which was at one time in Allen Murphy, plaintiff's
grandfather, of whose estate plaintiff claims that she is
joint heir with the defendants, and asking partition. By
cross-petition all the defendants save Joshua Murphy ask
the same relief as to their joint undivided interests as heirs
of Allen Murphy. The guardian of Joshua Murphy, in-
sane, asks that the title of the property be quieted in him
exclusively as against the plaintiff and his codefendants.
There was a decree in favor of Joshua Murphy in accord-
ance with the prayer in his answer and cross-petition, from
which decree plaintiff and all the other defendants appeal.
—*Affirmed.* ·

*J. B. McCrary* and *John W. Jacobs,* for appellants.

*J. F. Lavender,* for appellee.

McCLAIN, C. J.—In 1886 Allen Murphy died inte-
state, seised of the land in controversy, and leaving sur-
viving him his widow, Deby Ann Murphy, six living chil-
dren, and two grandchildren, the daughters of a deceased
daughter; the grandchildren being at that time minors.
One of the granddaughters, subsequently married, is the
plaintiff in this action, and all the other heirs are defend-
ants. Later in the same year all the children except Joshua

joined in a deed to their mother, Deby Ann Murphy, quit-claiming their interests to her in consideration of the sum of $1 to each in hand paid. A guardian having been appointed for the two grandchildren, their interests were by proceedings regular in form transferred to their grand-mother for a purported consideration of $200. At the time these conveyances of their interests by the other heirs to the surviving widow were made, Joshua was in the insane hospital. In January, 1887, he returned from the hospital, and executed a quitclaim deed to his mother, but remained at home, and worked upon the farm for some years. In 1893 Joshua was again committed to the insane hospital, and since that time he is conceded to have been incurably insane. In the meantime a warranty deed from Deby Ann Murphy to Joshua, purporting to be executed on January 7, 1891, was filed for record and duly re-corded as of February 9, 1891. The controversy in this case is as to whether this deed was delivered to Joshua and vested in him sole title to the property.

I. The recording of the deed duly executed by Deby Ann Murphy constituted presumptive, but not conclusive, evidence of delivery to Joshua, the grantee named therein.

1. CONVEYANCES: delivery: presumption: acceptance: burden of proof. The burden of showing that the deed was not in fact delivered is upon appellants, and they can overcome the presumption of delivery only by clear and satisfactory evidence. As the deed recites a consideration in hand paid and apparently imposes no condition or obligation upon the grantee, it is presumed to have been beneficial to the grantee, and proof of his acceptance is unnecessary. *Robinson v. Gould,* 26 Iowa, 89. Therefore evidence that at the time the deed was recorded the grantee was of unsound mind and incapable of assuming obligations does not in itself tend to negative the delivery of the deed. *Cecil v. Beaver,* 28 Iowa, 241; *Newton v. Bealer,* 41 Iowa, 334; *Palmer v. Palmer,* 62 Iowa, 204; *Foreman v. Archer,* 130

Iowa, 49. It may be .conceded that the deed does not pur-
port to be a deed of gift, but the case of *Robinson v. Gould,
supra,* is direct authority for the proposition that the record-
ing of a warranty deed apparently not a deed of gift, the
grantee being an adult and not so related to the grantor
as that a gift would perhaps be implied, is nevertheless
presumptive evidence of delivery, and, no condition or
obligation on the grantee being imposed, is presumed to be
beneficial so that an acceptance will be implied, although
there is no evidence that the grantee had knowledge of
the recording or assented to the passing of the title to him;
and in that case the court refused to consider the testimony
of the grantor that he retained possession of the deed with
the intent of retaining title as sufficient evidence to nega-
tive the delivery presumed from the recording. In stating
the result of the rule announced in that case as applicable
to circumstances quite similar to those of the case before
us, the court used this language:

> The burden of proof, therefore, is on the plaintiff
> (the grantor) to establish the nondelivery of the deed; that
> is, to negative the presumed knowledge of the deed on the
> part of Anthony (the grantee) and his presumed assent to
> it. And as he seeks to divest an apparent title to land
> conveyed by a deed which had been on record over nine
> years before this suit was brought, and failed to bring suit
> until the grantee's lips have been closed by death, it is in-
> cumbent on him to make out a case plain, clear, and de-
> cisive. Admitting, as we do, that the plaintiff's proposition
> that his brother Anthony, though all the time living in the
> neighborhood, both of the plaintiff and the land, has never
> in fact had any notice of the deed, and hence never as-
> sented to it, finds very much support in the evidence, yet
> (and this is the distinct ground on which we place our
> decision) there is not the fullness and satisfactory degree
> of proof which courts ought to require to divest a title
> against heirs (of the grantee) presumptively conferred by
> a recorded deed of such long standing as the one which is
> in question in this case.

The facts in the case before us are even more per-
suasive than those in the case last referred to.   At the time
of the recording of the deed Joshua was in fact living with
his mother on the land and farming it, and was, in so far
as the evidence discloses, competent to accept a conveyance.

There is testimony as to declarations of the mother,
which are certainly admissible as against the parties to this
suit claiming as her heirs, that she treated Joshua as cap-

2. SAME: declara-
tions of form-
er owner:
admissibility.

able of accepting the deed and advised him of
its execution.   Her declared purpose was to
encourage him in the belief that he was the
owner.   Now Joshua's lips are closed, not it is true by
death, but quite as effectually, by incurable insanity, which
became pronounced two years after the recording of the
deed.   The lips of the grantor have been closed by death,
and as to her intentions we have no evidence save that
afforded by her declarations made after the execution of the
deed and testified to by the other heirs.   So far as these
declarations tend to negative the intent presumed from the
recording of the deed, we think they are not competent to
impeach Joshua's title; but, if they were to be treated as
competent, they go no further than to indicate a desire on
the part of his mother to impress him with the thought
that he had assumed responsibilities which he must dis-
charge in order to realize the benefits of the transaction.

It is plain that if the deed conferred a present title,

3. SAME: present
title: validity:
evidence.

which the law presumes, failure of Joshua
to pay any portion of the consideration which
remained unpaid would not defeat that title.

In short, the appellants are seeking to defeat the legal
effect of the deed by showing declarations of the deceased
grantor attaching a parol condition.  We are clear that such
declarations may not be shown for that purpose.

Evidence for appellants that at the time the deed was
executed by the mother she was advised to keep it, and not
let Joshua have it until he had settled with her and paid

her what he had agreed to give for the property, is not

**4. SAME.**

persuasive as to the intention which remained in the mother's mind when the deed was subsequently recorded. She may well have concluded to vest the title in Joshua by the recording of the deed, and, as already indicated, her subsequent declarations to Joshua that he was not to have it until he performed certain conditions were not competent nor sufficient to overcome the presumption of delivery arising from the recording of the instrument.

II. The sufficiency of the conveyances by the heirs other than Joshua to vest a complete title in the mother prior to her execution of the conveyance to Joshua is questioned on various grounds.

It is contended that one of the sons, George, now presumed to be dead, was insane when he quitclaimed his undivided interest in the property to his mother. But

**5. SAME: insane grantor: good faith purchaser: notice.**

there was no judicial determination as to his insanity until after the execution of his quitclaim deed; and, while the evidence tends to show that he was in fact insane prior to that time and that his mother had knowledge of his condition, there is no evidence affecting Joshua with such knowledge. Joshua is therefore in the situation of claiming title to the undivided interest of his brother George through a conveyance executed at a time when George was presumptively sane, and it is well settled that an executed conveyance for value to a good faith purchaser will not be set aside in equity on the ground of insanity of which the purchaser had no notice in case he can not be put in *statu quo*. *Ashcraft v. De Armond,* 44 Iowa, 229; *Abbott v. Creal,* 56 Iowa, 175; *Alexander v. Haskins,* 68 Iowa, 73; *Swartwood v. Chance,* 131 Iowa, 714.

As to the contention that the conveyance of the minor grandchildren of their interest to their grandmother, which conveyance was made by their guardian in a probate pro-

ceeding, was invalid, it is sufficient to say that the time
for questioning the regularity of the proceed-
ings had expired long before this action was
brought.    See Code, section 3212.    It is
admitted that the guardianship proceedings in pursuance of
which the sale was made were regular in form, and that
proper notice thereof was served.    The minors who have
long since attained their majority, and who have failed to
question the regularity of the proceedings during the statu-
tory period of limitation in such cases, can not now have
relief on account of such irregularities, if any there may
have been.

6. SAME: sale of minor's inter-est: validity: limitations.

Although the record is entirely free from any sugges-
tion of actual fraud or undue influence on the part of
Deby Ann Murphy in procuring by quitclaim deeds the
apparent fee-simple title to the land in con-
troversy in which she had only a dower
interest after her husband's death, it is the contention of
appellants that the quitclaim deeds were executed in pur-
suance of an arrangement or understanding in the nature
of a family settlement by which she was to hold title to
the property until her death, when it should descend to the
heirs in accordance with law, and that her conveyance
to Joshua was in violation of this arrangement and in that
respect a constructive fraud.    Appellants rely upon want
of substantial consideration for the quitclaim deeds, and on
proof of conversations between several of the heirs and
their mother as to the purpose for which the title was being
placed in her.    But want of adequate consideration for the
quitclaims would not be a ground for setting them aside
or declaring a trust, and, as to the evidence relating to a
mutual purpose or intention that the property be held in
trust, it is sufficient to say that much of the testimony
supporting such an arrangement related to conversations
between the witnesses testifying, who are parties to this
suit, and their mother, which is wholly incompetent under

7. SAME: trusts: evidence.

Code, section 3604, and that without regard to this objection the testimony is far from being clear and satisfactory that any such arrangement was acquiesced in by the mother.   The farm was mortgaged, and there were debts of Allen Murphy to be paid.   It seems to have been the general desire that his estate be settled without proceedings in the probate court.   To facilitate such settlement, the children voluntarily made these conveyances, but there is no attempt in the record to establish a definite agreement or undertaking on the part of the widow that after the debts were paid the property should be held in trust.   It is hardly necessary to say that in order to charge the widow with a trust the evidence must be clear and satisfactory. *Palmer v. Palmer,* 62 Iowa, 204; *Luckhart v. Luckhart,* 120 Iowa, 248.

No constructive trust is made out, and parol proof of an express trust is excluded by the provisions of Code, sections 2918, 4625.   *Gregory v. Bowlsby,* 115 Iowa, 327.

8. SAME.   We do not hold, as counsel for appellants seem to think we must if we affirm the decree, that parol evidence is not admissible to establish a constructive trust, and we readily acquiesce in the views expressed in many cases cited by them in support of the proposition that a family arrangement, even in parol, may be established to charge property with a trust in the hands of a member of the family to whom it has been conveyed by other members.

But in the case before us there were no such confidential relations between the adult children who made these quitclaim deeds and their mother as to render the conveyances presumptively fraudulent.   To

9. FRAUDULENT CONVEYANCES: confidential relations.

invalidate these conveyances, it must be made to appear that the grantors were led by fraudulent practices or deception into parting with the title to their respective shares.   *Newis v. Topfer,* 121 Iowa, 433.

But, even if there were sufficient evidence tending to show a constructive trust by reason of the violation on the part of Deby Ann Murphy of an agreement in pursuance of which the quitclaims were executed, the right of action in favor of the appellants on that ground is effectually barred. An action brought for relief on the ground of fraud must be brought within five years after the discovery of such fraud by the party aggrieved. Code, section 3447, paragraph 6, and section 3448. When Deby Ann Murphy executed a warranty deed to the property to Joshua, she violated the terms of the trust which the appellants now seek to establish, and, when that deed was recorded in 1891, the appellants became charged with notice of the fact. *Bishop v. Knowles,* 53 Iowa, 268; *Laird v. Kilbourne,* 70 Iowa, 83; *McDonald v. Bayard Savings Bank,* 123 Iowa, 413.

10. SAME: limitations.

Some of the appellants as witnesses testified to circumstances excusing them from sooner instituting action, such as that they supposed Joshua would not live long, and, as he was unmarried and childless, the title of the property would revert to them as his heirs. This explanation might have bearing if laches were relied upon as against the appellants, but it has no bearing on the running of the statute of limitations. As the appellants became aware by the recording of the deed to Joshua that their mother was disclaiming the trust now alleged, it was their duty within the statutory period to institute a proper action for relief.

In no view of the case can we see how any right to relief at law or in equity is made out in behalf of the appellants, or any of them, and the decree is—*Affirmed.*

EVANS, J. (dissenting).—The land involved consists of 160 acres in Calhoun county. Allen Murphy died seised thereof in February, 1886. He died intestate and left surviving him his widow, Deby Ann Murphy, and six children and two grandchildren, being the daughters of a de-

ceased daughter. The children were George, Joshua, Henry, Richard, Mrs. Mary Nicholson, and Mrs. Allie Thompson. These were all adult at the time of the death of the father, and three of them were married. The grandchildren were Lillian and Minnie Lughead; the former being the plaintiff herein. They were minors, and were living in the home of the deceased at the time of his death. George, Joshua, and Richard were unmarried, and continued as members of the family up to the time of the decease of the father. At the time of the decease of the father the land was incumbered, and the rest of the estate was small, and no administrator was ever had. In August, 1886, all the children except Joshua joined in a quitclaim deed of the land to the mother for a consideration of $1. In guardianship proceedings, regular in form, the interest of the grandchildren was also conveyed to the mother for a purported consideration of $200. At the time of the execution of the quitclaim deed by the adult heirs, Joshua was in the insane hospital, having been committed there in April preceding. In January, 1887, he returned from the hospital, and in the same month he also executed a quitclaim deed to his mother. On August 30, 1886, George was committed to the insane hospital. Some months later he escaped therefrom, and has never since been heard from. After Joshua's return from the hospital in January, 1887, he remained at home and worked upon the farm for some years, although he never recovered his normal mental condition. In 1893 he was again committed to the hospital, where he has been ever since except for one brief interval. Ever since 1893 he has been deemed as incurably insane. On February 9, 1891, a deed of the land in controversy executed by Deby Ann Murphy to Joshua Murphy as grantee was filed for record and duly recorded. This deed purported to be executed on January 7, 1891. It is by virtue of this record that the record title of this land appears to be in Joshua Murphy.

The contention of the appellants is: (1) That the deed from Deby Ann Murphy to Joshua was never in fact delivered and that its recording was wholly unauthorized. (2) That the quitclaim deed executed to Mrs. Murphy by her children was so executed in consideration that she should thereby preserve the property, and permit the grantors to inherit their respective shares through her after her decease, and that Joshua had knowledge of such fact before 1891. (3) It is contended for the plaintiff that the guardianship proceedings were void, and that no title passed thereby from her to her grandmother. The net result of the pleadings is that the appellants are all agreed as to the relief demanded. They contend that each of the living children (excluding George, who is presumed to be dead) is the owner of the undivided one-sixth of the land, and that the two grandchildren are the owners of the remaining one-sixth thereof, and that Joshua's only interest in the land is such one-sixth share thereof. The answer of the defendant by his guardian is, in effect, a general denial with certain specific admissions. As to the alleged invalidity of the guardian's deed, he pleads the five-year statute of limitations as set forth in section 3332 of the Code of 1897. He contends for the validity of the title of his ward, and presents a cross-bill to quiet such title. I think the appellants are entitled to the relief prayed.

I.  I will direct my principal attention to the question whether Joshua ever did, in fact, acquire from his mother the title to this land. This depends upon the question whether there ever was a delivery of the deed. The deed was never known to be in the possession of Joshua at any time. It was last known to be in the possession of the mother. But it was recorded. Such recording creates a presumption of delivery. *Luckhart v. Luckhart,* 120 Iowa, 250. The burden is therefore upon the appellants to prove the contrary, and this must be done by clear and satisfactory evidence. *Robinson v. Gould,* 26 Iowa, 89. The mere

recording of the deed does not of itself constitute a delivery.. It is only evidence of delivery. *Day v. Griffith,* 15 Iowa, 104; *Cobb v. Chase,* ·54 Iowa, 253; *Davis v. Davis,* 92 Iowa, 157. Instruments are frequently executed and recorded before delivery merely by way of anticipation and preparation for the final consummation of the transaction under contemplation. The question of delivery in a given case is usually one of intent on the part of the grantor. *Creveling v. Banta,* 138 Iowa, 52; *Erler v. Erler,* 124 Iowa, 726. Where a parent executes and records a deed of gift to an infant child, this has been held of itself a good delivery, though the custody of the deed remain in the grantor. *Cecil v. Beaver,* 28 Iowa, 246; *Palmer v. Palmer,* 62 Iowa, 204. This holding is in the nature of an exception to the general rule. It is put upon the ground that there is no other practicable way that a parent can make a gift of land to his infant child. And this is in harmony with the general rule that the intent of the grantor governs, and that the recording of the deed under such circumstances is intended as an act of delivery. It should be noted that in the case before us the deed was not from ·a parent to an infant child. Even if the same rule should apply to an imbecile as to an infant in such cases, as contended for by appellee, yet the mother, grantor, was not dealing with Joshua as with an infant. . With abundant hopes, she was assuming to deal with him as one recovered from his mental aberration and competent to do business. I am clear, therefore, that the case comes under the general rule that the mere recording of the deed did not constitute delivery, but was presumptive evidence thereof. ·

.This is not a case where a parent proposed to make a gift of advancement to a child. The transaction was one of proposed purchase and sale. The farm covered by the deed included all the property owned by the mother and her entire family. Joshua had worked upon the farm since

his return from the hospital. He was much changed in manner, and was apparently depressed in spirit. He wanted to buy the farm. His mother believed that the purchase would stimulate him, and would aid in the improvement of his condition. The negotiations were known to the other members of the family, and were in no sense secret. The mother went to the office of an attorney in company with another member of the family, and procured a deed to be prepared, which she executed in due form. She took it home and showed it to Joshua, and explained to him what she expected of him before the deed could be delivered to him. The deed called for a consideration of $4,800. This was the full value of the property. This consideration was to be paid by the assumption or payment of certain debts owing by Mrs. Murphy and by furnishing a home as long as she should live to her and to the "two children" (grandchildren), and by paying her an additional sum of $600. That the negotiations contemplated acceptance and performance by Joshua to the extent at least of executing some written undertaking on his part is a conclusion quite unavoidable from all the circumstances appearing in evidence. This was in January and February, 1891. It is shown clearly that nothing further was ever done regarding the consideration to be paid or assumed. Immediately thereafter Joshua's mental condition became worse, and the brother Henry came on about the 1st of March, and took charge of the farm for that season. The mother retained the possession of the deed, and kept the same in a little box, together with the quitclaim deeds which she had received from her children. She continued in possession of the farm up to the time of her death in December, 1894. Joshua was committed to the hospital for the second time in 1893 as already indcated. The deed executed by the mother was last seen in her box. After her death it could not be found. No witness knew by whom the deed was filed for record, nor any circumstances in relation thereto.

The deed was never seen in the possession of Joshua either in his lucid moments or at any other time, nor was it found among his effects by his guardian after his committal. The relations of the family were affectionate. There does not appear to have been any opposition to the proposed sale to Joshua, nor does there appear to have been any motive to secrecy. Inasmuch as it clearly appears that the proposed deed was not intended as a gift or advancement, and that it was executed only in pursuance of a proposed purchase and sale, and that these negotiations were never consummated in any other respect, it becomes difficult to believe that a delivery could have been intended. The substantial consideration called for implied the necessity of acceptance and performance in some manner on Joshua's part, and it implied some act or undertaking on his part as a condition precedent to the delivery of the deed and the passing of title. The failure on his part to perform any of the precedent conditions would therefore negative the theory of the delivery. *Creveling v. Banta, supra.*

It is a substantial circumstance in appellants' favor that further negotiations on the part of Joshua became impossible because of his failing mental condition. The proposed consideration therefore wholly failed. If there was an intent to deliver the deed, there must have been an intent also to deliver immediate possession of the farm. But it is clear that the mother never parted with the possession of the farm, but held it as her own to the end of her life. Taking the circumstances as a whole, therefore, they present a strong and meritorious case as against the theory of the delivery of the deed. In some respects these circumstances are more satisfactory than the direct evidence of partisan witnesses might have been. They are in their nature wholly indisputable and thoroughly inconsistent with any theory of a completed transaction. If the negotiations failed before their completion, then presump-

tively the rights of the parties remained in *statu quo.* If the mother had brought an action in 1893 based upon the state of facts appearing herein and had asked to remove the cloud from her title, she must have prevailed. It could not be held that she inadvertently parted with her title by the mere recording of the deed in view of the later failure of negotiations. If the mother could have prevailed, then, these appellants should prevail now, unless they have lost something by the long lapse of time. It is a circumstance against the appellant that the mother took no steps in her lifetime to remove the cloud from the record. On the other hand, it does not appear whether she actually knew of it except as the presumption may obtain. She did not live long thereafter, nor was her possession in any manner challenged. It is said in argument by appellee that the guardian has been in possession for many years since the death of the mother. The record, however, is silent on that question. Adverse possession is not claimed either by pleading or otherwise. Neither is there any claim of laches. No rights of innocent third parties are involved. The long period of time which has elapsed since this cloud was placed upon the record before it was challenged is an important circumstance against the appellants. It is in the nature of an acquiescence, and the judicial mind asks for no explanation. When Joshua was committed in 1893, it was the opinion of the physician that his life would be very brief. It was the belief of the appellants herein that, if he recovered from his insanity, he would voluntarily remove such cloud himself. On the other hand, if his death resulted, these same parties would inherit from him as his heirs all of his property. The situation was one which might well appeal to the parties for a delay in the institution of suit. In such delay they followed the advice of counsel as well as their own inclinations. The relations of the members of this family appear always to have been free from friction, and marked by much tender regard for

each other, including their unfortunate brother. To award them the relief prayed herein would not despoil him. His present expectancy of life is eighteen years. This property is now of the value of more than $18,000. Joshua's right to a share thereof is recognized, and such share will amply meet all his requirements.

I reach the conclusion that there was no consummation of the proposed sale to Joshua, and that the title remained in the mother until her death, and that each of the parties herein is entitled to a child's share. I feel impelled, therefore, to dissent from the majority opinion.

Sherwin, J.—I concur in the foregoing dissent.