RENNIE JONES et al., Appellees, v. MAGGIE BETZ et al.,
Appellants.

**DEEDS:** Delivery—Presumption—Overthrowing Presumption. The pre-
1  sumption of delivery of a deed which arises from possession and re-
cording of the deed by the grantee cannot be overthrown by equivocal
testimony. (See Book of Anno., Vol. 1, Sec. 10084, Anno. 19 *et seq.*)

**DEEDS:** Evidence—Impeachment of Title. Principle recognized that
2  the grantor in a deed of conveyance may not by subsequent declara-
tions impeach the title conveyed by him.

**Headnote 1:** 18 C. J. pp. 418, 419, 420, 442. **Headnote 2:** 22 C. J.
p. 357.

**Headnote 1:** 8 R. C. L. 998.

*Appeal from Polk District Court.*—W. S. COOPER, Judge.

NOVEMBER 16, 1926.

OPINION ON REHEARING APRIL 7, 1927.

An action in equity to set- aside a deed. From a decree by
the district court of Polk County granting the relief prayed
defendants appeal.—*Reversed.*

*Hughes, Taylor & O'Brien,* for appellants.

*Edwin J. Frisk* and *C. B. Hextell,* for appellees.

ALBERT, J.—Anna Ryan was the second wife of P. H. Ryan.
In the year 1919 or 1920, she was taken to the hospital for the
insane at Clarinda, where she remained until the time of her
death, on the 25th day of March, 1921. Her
husband, P. H. Ryan, who was at one time a
practicing attorney in the city of Des Moines,
many years prior to his death suffered a paralytic stroke, from
which he largely lost the use of his lower limbs, and was com-
pelled to move around on crutches during the remainder of his
life, which ended November 4, 1922.

At least until the 25th day of March, 1901, Anna Ryan was

the owner in fee of Lot 7 in Block 5 in Holcomb's Addition to the city of Des Moines. On this lot were five houses, in one of which the Ryans lived, and the others were rented. On the above date, said Anna Ryan executed and acknowledged a warranty deed for the aforesaid lot, naming her husband, P. H. Ryan, as grantee therein; and the only question in the case is whether or not this deed was ever delivered to P. H. Ryan. At the time of the bringing of this action, both Anna and P. H. Ryan were dead, and the appellees herein are the heirs and legal representatives of Anna Ryan, and appellants are the heirs and legal representatives of P. H. Ryan. So far as we learn from the record, both Anna and P. H. Ryan died intestate.

It is shown beyond dispute in the record that, after the death of Anna Ryan, P. H. Ryan took this deed and had it duly recorded in the deed record of Polk County, Iowa. Appellees, being plaintiffs in the action, assert the non-delivery of the deed, and have the burden of proof of establishing this allegation.

It is too well settled to require citation of authorities that, to make a warranty deed effective, it must be delivered. It is also well settled that, where a deed is signed, acknowledged, and recorded, it is presumed to have been properly delivered; but, of course, this presumption is a rebuttable one. *Savery v. Browning,* 18 Iowa 246; *Robinson v. Gould,* 26 Iowa 89; *Webb v. Webb,* 130 Iowa 457; *Stiles v. Breed,* 151 Iowa 86; *Burch v. Nicholson,* 157 Iowa 502; *Tucker v. Glew,* 158 Iowa 231; *Sederquist v. Peterson,* 194 Iowa 1290; *Johnson v. Lavene,* 196 Iowa 471. Among the above cases, the *Webb* case and the *Stiles* case were cases where the deed was recorded after the death of the grantor. It is equally well settled in this state that the plaintiff has the burden of showing non-delivery by clear and satisfactory proof. *Davis v. Hall,* 128 Iowa 647; *Burch v. Nicholson,* supra; *Johnson v. Lavene,* supra. Plaintiffs herein, therefore, have the burden, even though the recording was after the death of grantor, of overcoming the presumption aforesaid by clear and satisfactory proof, and the only question before us is whether or not this quantum of proof has been furnished by appellees.

Gray, a neighbor of the Ryans', testifies that he had known them for 30 years; that he was at their house after the death of Anna. He at one place in his testimony says that it was at the invitation of P. H. Ryan, and at another, that he called to ex-

press his sympathy, and to visit Mr. Ryan; that, when he entered the house, P. H. Ryan had a box or trunk, and part of the contents was dumped on the floor, and witness started to help Ryan look over the papers. Witness's description of the contents of the box is very indefinite. He says:

"I didn't pay much attention to the stuff, but among the papers and letters we finally came across the deed. As to who discovered this deed has never been settled in my mind. I don't know what I was looking for, but when that deed was brought up, it got into my hands. Either he picked it up or I did. That was never straight in my mind. Ryan said, 'That was the deed. I will take it and record it.' "

Witness took Ryan down to the courthouse, and he (Ryan) had the deed recorded himself. He says there were two or three pieces of jewelry in this receptacle; that he thought one was a lady's ring, and the other a necklace; that there were also letters in this receptacle, but the witness does not know to whom the letters were addressed.

This witness was further permitted to testify that he had talks with Mrs. Ryan about this property at different times during the five years prior to her death, and that she said or always claimed that the property was hers. When asked to tell the conversation, witness answered:

"Well, she just remarked about the property. It was hard for her to pay the taxes and keep it up, but that she would get through with it all right, or something to that effect."

This testimony was all objected to because irrelevant and immaterial and calling for a statement or admission by the grantor which is incompetent under any circumstance.

Vinnie Tobin testified that, during the time from 1912 to 1917, she was a tenant in one of these houses; that Mrs. Ryan always collected the rent from her. This witness also testifies that Mrs. Ryan talked to her, on different occasions between 1912 and 1917, and that the substance of the conversation every time was that Mrs. Ryan told the witness that the property belonged to her. This testimony was objected to on the same ground as the objection to similar testimony by the witness Gray. Witness further says that Mrs. Ryan at one time, which witness is unable to fix, stated that "they tried to get her to deed the property to the church, but she would not do it." (Ryan was a member of

the Catholic church,. and Anna was·not.)    This statement was also objected to. · Witness further says that she does not know approximately when the statement was made, but that it was before witness moved into the Ryan house, and while P. H. Ryan was in the hospital.

Witness Potter, an employee of the treasurer's office of Polk County, testifies that, back as far as the year 1915, to and including March 12, 1921, the tax receipts issued on this property were made to Anna Ryan.

Lillian M. Diehl testifies that·her father's business was paper hanging and painting; ·that she kept books for him, and collected for his services; that he worked on these different houses on this lot; and that Mrs. Ryan ordered the work done, and paid the bills personally.

Mrs. Francis Hawkins testifies that she lived across the street from the Ryan property, and that Mrs. Ryan took care of the ·property. all the time; that she did not know who collected the rent or paid the taxes.

Rennie Jones, a ·niece of Anna Ryan's, produced certain letters written by Anna Ryan, which were ‑introduced in evidence.   The first one was written in 1906, and contains nothing of importance bearing on the issues in this case, and· at most, seems to contain an expression of dissatisfaction with several of the relatives of P. H. Ryan. ·The next one was written on April 24, 1910, and the material .part is the following:

"Well, we are going ·to· try and sell ‑the lower two houses and keep the upper three.   I have come to the conclusion that, even with those, we can fix it ‑so· we can get as much rent out of the two; and if I want to, I can rent a room or two in the one we live in, and not have much to look after.   When we sell, I. tell you the money will not ‑last long, when I get hold of it.''

. The remainder of the ‑letter is devoted to criticizing some of the relatives of P. H. Ryan.

From a later letter, dated· June 10, 1916, the following excerpt is taken:

"Now you must have been blue when you wrote those few lines to·me.· You wrote that death was a debt we all must pay. Now I feel I want·to·live longer than P. H. for I want my folks to have ·my things. I don't want his folks to have them for they would .not take ·care of them.   You know 'come easy, .go· easy'

when a person don't own anything."

All these letters were objected to, so far as they contained any declaration or admission by the grantor named in the deed, and further objected to as being incompetent, for the reason that in each instance only part of the letter was offered.

The bank book of the Ryans was introduced in evidence, covering some ten years before their death. It showed a joint account in the names of P. H. and Anna Ryan.

This is all the testimony in the case.

It is from the circumstances related in the foregoing testimony that appellees claim that they have sustained their burden of proof, and that the district court was warranted in its decree setting aside this deed. Is this such clear and satisfactory proof as the law requires?

The testimony, in substance, clusters largely around the testimony of the witness Gray and the claimed declarations or admissions of Mrs. Ryan prior to her death. The claim of appellees is that, because Gray found P. H. Ryan in his own home, going through this box or chest, the inference is that the box and its contents belonged to Anna Ryan. We do not believe that appellees are entitled to this inference. It is equally as consistent to infer that the box and contents belonged to P. H. Ryan as that it belonged to Anna; but appellees say that, because there was a woman's ring and necklace in the box, their contention is strengthened. No witness identifies this box or any of its contents as belonging to Anna. More than this, P. H. Ryan was in possession of the box and contents after Anna was sent to the asylum, and at the time Henry Gray entered the house. It is just as consistent to say that this box and its contents belonged to P. H. Ryan as to say that it belonged to Anna Ryan. Further than this, the evidence that comes from the living witnesses shows that, the only time any of them ever saw this deed, the same was in the possession of the grantee, P. H. Ryan. In the absence of any other facts and circumstances, this possession by him of the deed would raise a presumption of delivery. In *Nowlen v. Nowlen,* 122 Iowa 541, we said:

"The instruments being duly executed, and found in the possession of the grantee, there is a presumption of due delivery. *Hall v. Cardell,* 111 Iowa 206. This being shown, the burden was upon plaintiffs to overcome the presumption by evidence

negativing such delivery, and this we think they have entirely failed to do."

To the same effect, see *Partello v. White,* 197 Iowa 24.

From this line of decisions and the testimony showing that the deed was in the possession of P. H. Ryan at the time the witness Gray saw it, the presumption is that it was duly delivered to Ryan; and, the burden being on appellees to show nondelivery, they must overcome this presumption; and in this they have failed.

It is thought that the declarations made by Anna, heretofore recited in evidence, lend color to the contention of appellees; but we have said, in relation to these matters, that declarations of this character made by a grantor in a warranty deed are not admissible for this purpose. See *Shepherd v. Delaney,* 191 Iowa 138; *Mathers v. Sewell,* 193 Iowa 35. The *Mathers* case contained a very similar situation to what we have in this case.

2. DEEDS: evidence: impeachment of title.

As to the letters,—if they are assumed to be admissible,—the only one which appellees seriously contend has much force and effect on this matter is the one bearing date of April 24, 1910. The force and effect of this letter, however, are much weakened by the first sentence therein, to wit, "Well, we are going to try and sell the lower two houses," etc., and the letter of June 10, 1916, where the expression is used:

"Now, I feel that I want to live longer than P. H. for I want my folks to have my things. I don't want his folks to have them for they would not take care of them."

These two letters are rather indefinite and uncertain, and have very little, if any, weight in supporting the contention of appellants.

Remembering that the burden of proof is upon appellees herein to sustain their allegation of non-delivery of the deed by clear and satisfactory proof, we have carefully reviewed this record, and we are unable to find that there is sufficient evidence to show that appellees have furnished this quantum of proof. It follows, therefore, that the court erred in its conclusion in this matter, in entering the decree setting aside this deed.—*Reversed.*

STEVENS, VERMILION, and MORLING, JJ., concur.