O. B. GIBSON et al., Appellants, v. GEORGE H. GIBSON, Appellee; IDA COLLINGS, Administratrix, Intervener.

FEBRUARY 7, 1928.

REHEARING DENIED MAY 11, 1928.

*John McLennan,* for appellants.

*Roy E. Burns,* for George H. Gibson, appellee.

*Higbee & McEniry,* for Ida Collings, intervener, appellee.

WAGNER, J.—There are involved in this cause of action approximately 230 acres of real estate, situated in Union County. It was formerly owned by Marietta Hoover Gibson, who died intestate October 28, 1912, leaving the appellant O. B. Gibson as her surviving husband, and her sons, the appellants C. T. Gibson and L. J. Gibson, and the defendant, George H. Gibson, as her sole heirs-at-law.

On January 2, 1911, the aforesaid Marietta Hoover Gibson and her husband, O. B. Gibson, made a warranty deed for all of said real estate, which was duly acknowledged on said date before William A. Wright, a notary public in and for Union County, in which the defendant, George H. Gibson, is named as grantee. In the covenant of warranty, the grantors warrant the premises as free from incumbrance, except a mortgage of $500 in favor of Union County, Iowa. The deed recites, ''In consideration of the sum of $10,000 in hand paid by George H. Gibson,'' and contains the following reservation:

''We, the grantors of this deed, reserve a fully paid life lease in all the above described property, possession not to be given the grantee until the death of both Marietta Gibson and O. B. Gibson.''

On November 4, 1912, said deed was filed for record in the recorder's office of Union County, Iowa, and was at that time duly recorded in the deed records of said county. Prior to the time of the death of Marietta Hoover Gibson, the father, mother, and the son George H. Gibson resided upon said real estate, and after the mother's death, the father and son George H. Gibson continued to reside upon said farm until 1917, when another son, C. T. Gibson, and his wife, Emma C. Gibson, moved into the house with them; and thereafter, the house upon said real estate was occupied by the father, said two sons, and the wife of C. T. Gibson, until the fore part of the year 1926, when the third son, L. J. Gibson, came from Idaho, and gained a residence with the rest of the family upon said farm.

On March 8, 1926, Fred Collings, the sheriff of Union

County, was shot and killed, and soon thereafter, the defendant, George H. Gibson, was indicted for the murder of the said Collings, and was tried and convicted (see *State v. Gibson*, 204 Iowa 1306), and was, at the time of the trial of the instant case, confined in the penitentiary, resting under a life sentence. Two days after the murder, Ida Collings, as administratrix of the estate of Fred Collings, commenced a civil action against George H. Gibson for damages for the wrongful killing of Collings, and prayed that a writ of attachment issue against the property of the said George H. Gibson, which attachment, under order of court, issued, and was levied upon the real estate herein involved. Thereafter, upon trial of said cause, judgment was rendered in favor of the plaintiff therein, and against the said George H. Gibson, in the sum of $12,000 and costs, and said judgment confirmed the attachment levied against the real estate herein involved.

On June 28, 1926, the appellants herein commenced against George H. Gibson the instant case, a partition suit, and in their petition they alleged the death of Marietta Hoover Gibson, as aforesaid, and that she was the owner of said real estate at the time of her demise. To this petition the defendant, George H. Gibson, filed no answer; but he was represented, at the time of the trial, by Roy E. Burns, as his attorney. The administratrix of the estate of Fred Collings intervened herein, alleging in her petition of intervention the execution of the aforesaid deed unto George H. Gibson and the fact that she, as administratrix, has a lien against said real estate, and she further avers therein that plaintiffs seek to ignore the existence of the title conveyed by the father and mother unto George H. Gibson; that they undertake to institute an action for the recovery of real property in this partition proceeding; that they are attempting to join with an action in partition an action of right for the recovery of real property; and that said action for the recovery of real property is barred by the statute of limitations.

The plaintiffs, by way of reply to the petition of intervention, deny the conveyance unto George H. Gibson of the real estate by the deed aforesaid.

The defendant, George H. Gibson, by way of answer to the petition of intervention, alleges that he is not possessed of suffi-

cient information to either affirm or deny the allegations thereof, and demands strict proof.

Upon trial of these issues, the court found for the intervener; that the defendant, George H. Gibson, is the owner of said real estate; that the aforesaid deed is a valid deed, duly executed and delivered as of the day it bears date; and that the evidence offered by plaintiffs upon the question of delivery of said deed is insufficient to overcome the presumption that said deed was delivered as of the day of its execution; that the plaintiffs have no right, title, or interest in said real estate, except only the life estate of the appellant O. B. Gibson, as stated and referred to in said deed of conveyance.

From this action of the trial court the plaintiffs have appealed.

The appellee intervener contends that the action of appellants is, in effect, an action for the recovery of real property, and that the same is barred by the statute of limitations. ·They rely upon Paragraph 6, Section 11007, of the Code of 1924, and *Tilton v. Bader*, 181 Iowa 473; *School Dist. Twp. of Richland v. Hanson*, 186 Iowa 1314; *Williams v. Allison*, 33 Iowa 278. Under Paragraph 6, Section 11007, of the Code, an action may be brought for the recovery of real property within ten years, and not afterwards. In *School Dist. Twp. of Richland v. Hanson*, supra, the question involved was the right to the possession of a certain one-acre tract formerly owned for school purposes, and the action, an injunction proceeding, was begun by the plaintiff; and the defendant, by way of cross-petition, alleged certain facts claimed to entitle her to the possession, to which pleading the plaintiff in its reply set up the bar of the statute of limitations. To this reply the cross-petitioner filed a demurrer, which was overruled; and we therein held that, while an action for the recovery of real property should be by ordinary proceedings, yet, upon a ruling on a demurrer which sets up the statute of limitations, it is immaterial that the petition in the suit was filed in equity. It is quite clear that the matter alleged in the reply constituted a good defense, to wit: the bar of the statute of limitations. But there is no analogy between that case and the instant case. In *Williams v. Allison*, supra, and *Tilton v. Bader*, supra, both being equitable actions, in

which the relief asked by the petitioner was based on fraud, it was held that, while relief was asked for the fraud, yet the allegations and evidence of fraud are merely incidental to the relief asked and granted, said requested relief being the establishment of the title or the recovery of the real estate, because of the fraud; and that, therefore, neither of said actions was outlawed until ten years after the cause of action accrued. In 25 Cyc. 1026, we find the following:

"The rule is laid down that, in those cases where the main ground of action is fraud or mistake whereby defendant has attained the legal title to the land in controversy, and the chief contention between the parties is with respect to the fraud or mistake alleged, yet, if plaintiff alleges facts which show, as matter of law, that he is entitled to the possession of the property, and a part of the relief asked is that he be let into possession, or that his title to the land be quieted, the action is, in reality, for the recovery of real property, and is not barred, except by the statutory limitation barring such actions."

Where real property is obtained by fraud, the transaction is not void, but only voidable. The grantee in such cases obtains a title, although it is defeasible; and under our statute and the two decisions last above mentioned, the period in which said actions may be brought is limited to ten years after the accrual of the action. It is quite clear that said two cases are not analogous to the instant case. In the *Tilton* case we said:

"The word 'recovery,' in common parlance, signifies the regaining that which has been lost or missing or taken away; but in a legal sense it means no more than obtaining by course of law or judicial proceedings."

We held therein that:

" * * * recovery [of real estate] is had whenever the right to or title in or possession of the realty in controversy is adjudicated in favor of a litigant, and the test to be applied in determining whether an action is brought for that purpose lies in ascertaining whether relief as above described is sought in the petition."

In the instant case, the deed is in no way mentioned in the petition; the appellants therein ask no relief as against the deed or the record thereof. The defendant, George H. Gibson, makes

no response to the petition. The first pleading referring to the deed is the petition of intervention, and the appellants, replying thereto, contend, in substance, that the deed in question has never been delivered. Intervener's rights can rise no higher than the rights of the defendant, George H. Gibson. An undelivered deed is no deed, and no title, either defeasible or indefeasible, passes under an undelivered deed; while in cases of fraud, a title, although it be only defeasible, does pass under the deed. Herein lies the distinction between the cited cases and the instant case. The contention of the appellants responsive to the claims of the intervener is that the deed was not delivered, and that George H. Gibson received no title or rights thereunder. Their contention is that Marietta Hoover Gibson was the owner of the real estate at the time of her death, and that her surviving husband and the three sons are tenants in common.

"Adverse possession maintained by one cotenant against the other may create title by prescription in favor of the former, and thus end the right of the latter to partition; but until such prescriptive title is created, neither laches nor the statute of limitations will prevent the maintenance of proceedings to compel partition." 30 Cyc. 190.

"Before the statute of limitations will commence to run, as between cotenants, there must be an ouster, and there must in fact be adverse possession." *Stern v. Selleck*, 136 Iowa 291.

Under the record of this case, there has been no ouster; for O. B. Gibson, the surviving husband, and his various sons have been in the possession of the real estate, as hereinbefore mentioned. It thus becomes manifest that the appellee's contention that the appellants' action is for the recovery of real property, and because thereof is barred by the statute of limitations, must fail.

We do not determine herein whether the right to raise the statute of limitations is personal only to George H. Gibson, as appellee's right to raise the question is in no manner challenged by the appellants.

The determinative question in this case is as to the delivery of the deed. The settled rule in this state is that, where a deed is signed, acknowledged, and recorded, it is presumed to have

 been properly delivered; but, of course, this presumption is rebuttable. *Jones v. Betz*, 203 Iowa 767; *Stiles v. Breed*, 151 Iowa 86; *Webb v. Webb*, 130 Iowa 457; *Burch v. Nicholson*, 157 Iowa 502; *Sederquist v. Peterson*, 194 Iowa 1290; *Johnson v. Lavene*, 196 Iowa 471; *Robinson v. Gould*, 26 Iowa 89. In the first three cited cases, the deed was recorded after the death of the grantor. It is also the established rule in this state that, where the deed has been recorded, the burden is then upon the one attempting to show non-delivery, and the evidence tending to establish the same must be clear and satisfactory. *Jones v. Betz*, supra; *Burch v. Nicholson*, supra; *Johnson v. Lavene*, supra; *Davis v. Hall*, 128 Iowa 647. In *Tucker v. Glew*, 158 Iowa 231, we said:

"But having shown a duly executed deed, and produced evidence of the recordation thereof, presumption of delivery arises; and this delivery not later than the acknowledgment of the instrument."

"Presumption of delivery, arising from record, is not dependent upon evidence of a consideration, having been paid." 18 Corpus Juris 420.

See, also, *Stiles v. Breed*, supra.

In *Burch v. Nicholson*, supra, we said:

"As the deed recites a consideration in hand paid [as does the deed in the instant case], and apparently imposes no condition or obligation upon the grantee, it is presumed to have been beneficial to the grantee, and proof of his acceptance is unnecessary."

See, also, *Robinson v. Gould*, supra.

"It is plain that, if the deed conferred a present title, which the law presumes, failure of Joshua [the grantee] to pay any portion of the consideration which remained unpaid would not defeat that title." *Burch v. Nicholson*, supra.

Under the rules of law hereinbefore announced, the deed having been recorded, its delivery is presumed. Is the evidence tending to establish non-delivery of that clear and satisfactory character which is made necessary by our previous pronouncements?

The notary public who took the acknowledgment of the grantors is dead. O. B. Gibson, one of the grantors, was not called as a witness, it being shown by the record that he is a

man 87 years old, physically infirm, and perhaps of failing memory,—although the witness, Beaumont, formerly clerk of the district court of Union County, but now a deputy in said office, testified that he was in a normal mental condition the last time he saw him. The defendant, George H. Gibson, was not present at the trial, nor was his deposition taken. If non-delivery of the deed has been established, it is by the testimony of the witness Luella Fogg Carey, who is the cousin of the Gibson boys, and resides at Peoria, Illinois. She testified that she and her mother were in attendance at the funeral of her aunt, Marietta Hoover Gibson, arriving at the home October 30, 1912, and that her mother became sick, and was taken to the hospital at Creston, where she remained for about three and one half weeks, during which time the witness remained in the Gibson home, doing most of the housework; that her uncle, O. B. Gibson, and her cousin, George H. Gibson, were occupying the home at that time; that she looked over the pictures, histories, letters, clothing, bed linen, and everything, to see that they were in order,—looked through the family albums, and found a lot of photographs; that there was an old-fashioned writing desk and bookcase combined, and in it she found papers, letters, a package of records, and deeds, and things of that sort; that she found the deed in question with a bundle of other deeds and papers; that she showed said deed to her cousin, George. At this point, the witness was asked, ''What did he say?'' She answered:

''I asked him if he knew about it, and he said he did; and my idea of a deed was, it was to be recorded; and I said, 'Why hasn't it been recorded?' He said to me, 'You will notice that it speaks of a consideration of $10,000,' and he said, 'I never paid that, and the deed was never given to me; and I didn't wish to do anything about it, on that account, not thinking it would be lawful,' and he didn't also wish to do anything, without the knowledge of his brothers, figuring they might think he was discriminating against them,—something of that sort. I kept on insisting that the deed should have been recorded. He kept saying it shouldn't, and let the matter go; but the next time I came to Creston to see my mother,—I think beginning the fore part of the next week,—I brought the deed with me, and had it recorded,—paid the fee out of my own pocket.''

About two weeks before the trial, the witness Folks, of Creston, accompanied by the witness Wilson, of Peoria, visited the witness Carey at her home in Peoria, and had with them an exact copy of the aforesaid deed. The witness Folks is special agent for the Chicago, Burlington & Quincy Railroad Company, and the witness Wilson is city freight agent for the Chicago, Burlington & Quincy Railroad at Peoria, Illinois. Folks introduced himself as an assistant to Mr. Pratt, the Chicago, Burlington & Quincy attorney of the Chicago office. During the examination of Mrs. Carey, the intervener, by proper questions, laid the ground for her impeachment by the witnesses Folks and Wilson. After the plaintiffs had rested, the intervener called the impeaching witnesses, both of whom testified that, at the time of their interview with her, she stated to them that she never made any investigation of the papers of Marietta Gibson after her death; that she knew nothing about the delivery of the deed of which Exhibit 12 is a copy (being the copy which the witnesses had with them) ; that she did not take the deed to the recorder's office and have it recorded, and knew nothing about it; that she knew nothing whatever about the title to the property; that she knew her aunt owned it, but never heard anything about the deed, or saw or was in any way connected with the deed; that she had never seen a deed from Marietta Gibson and O. B. Gibson, never heard her uncle or aunt talk about such a deed, or ever had a conversation with George H. Gibson about such a deed, had nothing to do with the recording of it, and did not know who did record it; that she knew nothing about the deed or its execution or delivery; that she said that George H. Gibson had $10,000, or words to that effect; that they had a plat of the land with them, as well as the copy of the deed, Exhibit 12, both of which were shown to the witness; that Mrs. Carey read the copy of the deed over.

It thus becomes apparent that we have a relative, a cousin, testifying in behalf of the appellants. If the witnesses Folks and Wilson are to be believed, then she is thoroughly impeached. As it appears from the record, Mrs. Carey is an intelligent lady. She does not claim to have had any conversation with her uncle, O. B. Gibson, relative to the deed, but she claims to have had it recorded. It is passing strange that, with the degree of intelligence seemingly possessed by her, she would

have the deed recorded without any authority from her uncle, the living grantor, and over the protests of her cousin, George H. Gibson, the grantee.

The fact that the two Gibson boys and the father were occupying the farm under some sort of an arrangement is of no material consequence, for in the deed there was a reservation of a life estate during the lifetime of the father.

It is shown by the record that the mortgage in favor of Union County, being the $500 mortgage referred to in the deed, was renewed in 1915, the said George H. Gibson signing a stipulation to the effect that the extension of the time of payment is in accordance with his desire, and that he accepts and agrees to all the conditions and provisions stipulated in the instrument, with which he will faithfully comply. It is also shown by the record that, on January 28, 1924, George H. Gibson, to secure his note for $1,100, executed a mortgage upon a portion of the real estate, which mortgage was foreclosed shortly prior to the commencement of the instant case, which foreclosure was with the knowledge and approval of the appellant C. T. Gibson, and which must have been with the knowledge of the other two appellants; and that the real estate described in the mortgage has been sold on execution, to make the amount of the judgment against George H. Gibson.

We are disposed to agree with the trial court in holding that the testimony tending to establish non-delivery of the deed is not of such clear, satisfactory, and convincing character as to overcome the presumption of delivery by reason of the recording of the deed.

We therefore find that the decree of the trial court is correct, and the same is hereby affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, ALBERT, and KINDIG, JJ., concur.