W. H. MILLER, Trustee, Appellant, v. A. J. MILLER et al., Defendants; ARTHUR BARNEY, Intervener, Appellee.

No. 40479.

OCTOBER 14, 1930.

REHEARING DENIED JANUARY 21, 1931.

*McCoid, McCoid & McCoid,* for appellant.

*A. L. Heminger,* for appellee.

STEVENS, J.—The controversy in this case is between the plaintiff-appellant and the intervener, and involves only the issue as to the priority of their respective mortgage liens. Out-side of essential details to be later referred to, the facts are, in substance, as follows: On April 4, 1928, A. J. Miller and wife executed two mortgages, each upon an identical tract described by metes and bounds, and located in Farmington, Iowa. One was given to W. B. Seeley, to secure the payment of a note for $2,000, dated April 8, 1926, payable to the Trust & Savings Bank, due in five years, which was, on the above date, held by the mortgagee. The other was given to C. G. Foster, to secure the payment of a note of $1,074, of even date therewith. Later, Seeley transferred the $2,000 note, by delivery to appellant as trustee for the National Bank of the Republic, Chicago, Illinois, together with a written assignment of the mortgage, as collateral security for a pre-

existing debt owed by him and others to said bank. Before the maturity thereof, Foster sold and transferred the note held by him to the Western Milling Alfalfa Company, for value. The Milling Company was later adjudged a bankrupt, and intervener was appointed trustee, and appears as such in this case. Appellant asserts that his mortgage is prior in execution and recording to that of the intervener: whereas intervener contends that the mortgage which he represents was given for purchase money; that appellant's mortgage was not delivered until after the Foster mortgage was recorded; and that, because of these facts, the lien of his mortgage is prior and senior to that of appellant. The record is clear, and the fact is undisputed that appellant's mortgage was first executed and recorded. The indebtedness which appellant's mortgage was given to secure, as stated, was antecedent to the execution thereof.

The claim of intervener that the mortgage held by him was given for purchase money is without support in the record. It was in reality likewise given to secure a pre-existing debt. The  mortgagor and Foster were previously engaged in business in Farmington as partners. Miller, sometime prior to April 4th, purchased the interest of Foster in the partnership. Before full payment of the purchase price was made, the Trust & Savings Bank in which Miller kept his funds was closed, and he was unable to complete the payments due. Hence, the note to Foster was given, in settlement of the balance remaining unpaid. The mortgage of the intervener is in no sense a purchase-money mortgage, in such sense as to give him priority over pre-existing liens and equities.

The definition of a purchase-money mortgage given in Black's Law Dictionary (2d Ed.) 794 is sufficiently accurate and comprehensive for the purposes of this appeal. It is as follows:

"A mortgage given, concurrently with the conveyance of land, by the vendee to the vendor, on the same land, to secure the unpaid balance of the purchase price."

In this connection, see *Ely Sav. Bank v. Graham*, 201 Iowa 840; *Ladd & Tilton Bank v. Mitchell*, 93 Ore. 668 (184 Pac. 282); *State Bank of Kingman v. Shepherd*, 105 Kan. 206 (182

Pac. 653). The contention of intervener that the mortgage held by him is a purchase-money mortgage avails him nothing.

The record is devoid of any direct evidence to the fact that Weigner, who procured the execution of appellant's mortgage, was the agent of the mortgagee. The mortgagee resides in Mount Pleasant, was not present at the time of the execution of the instrument, and did not know thereof until a later date. Seeley was president, and Weigner cashier, of the Farmington Trust & Savings Bank, which, at the time of this transaction, was insolvent. The $2,000 note, which was signed by both Miller and his wife, was in the possession of Weigner. He assumed in the transaction with Miller to act for Seeley, and his action was fully approved and ratified by Seeley. There can be no question but that the mortgagors intended, by the delivery of the instrument to Weigner, to convey an immediate and valid lien upon the premises therein described. This is clearly evidenced by the testimony of Miller to the effect that he advised Foster, prior to the execution of the note and mortgage to him, that he had previously executed a mortgage to Seeley. Foster, therefore, knew that the lien of his (Seeley's) mortgage was intended to be, and was in fact, senior to his. Miller is corroborated in his testimony by that of Seeley, who testified that Foster later went to Mount Pleasant for that purpose, and sought to sell his note and mortgage to Seeley as a second mortgage. Neither the testimony of Miller nor that of Seeley is at this point contradicted by any witness. As stated, the only evidence relied upon by the intervener to negative delivery of the mortgage to Seeley, or to one acting for him, is that the mortgagee was not personally present, and was not informed of the transaction until later.

The record of the mortgage is deemed presumptive evidence of delivery. *Heavner v. Kading,* 209 Iowa 1275; *Jones v. Betz,* 203 Iowa 767; *Gibson v. Gibson,* 205 Iowa 1285; *Burch v. Nicholson,* 157 Iowa 502.

No doubt, the record of this case would have been much strengthened by proof, apparently readily available, that Weigner was, in fact, the agent of Seeley. The entire course of dealing must, however, be considered, and it seems to us that the only legitimate inference therefrom is that Weigner was acting for Seeley, with full authority to conduct the transaction.

It is also contended by intervener that, as appellant's mortgage was assigned to secure a pre-existing debt, which fact was shown on the face thereof, he is not a holder for value. The  rule in this state is to the contrary. *Des Moines Nat. Bank v. Stanley,* 206 Iowa 134; *McLaughlin-Gormley-King Co. v. Hauser,* 195 Iowa 224; *Leach v. City-Commercial Sav. Bank of Mason City,* 207 Iowa 1254. It is not material that the mortgage was given to secure a pre-existing debt, under the facts of this case. While the authority on this point is not plentiful, the general rule stated in 1 Jones on Mortgages (8th Ed.), Section 670, is that:

"There is a presumption that the first recorded mortgage has priority; and the burden of proving that the mortgagee in such mortgage had knowledge of the existence of a mortgage or prior execution rests upon the party who makes this claim."

The same general rule is stated in 19 Ruling Case Law 408.

Attention has already been called to the evidence respecting the execution of the two mortgages. The Foster mortgage was, by clear understanding of the parties, a second mortgage. The  Western Alfalfa Milling Company was charged by the record with constructive notice of the priority of the Seeley mortgage, before paying value therefor. Had the notice thus imparted been followed up by appropriate inquiry, it would have been definitely ascertained that the Seeley mortgage was not only prior in recording, but also in execution. Thus, the priority of appellant's mortgage is clearly established. The trial court was, therefore, in error in giving priority to the lien of the mortgage of the intervener. The motion to strike, submitted with the case, is overruled. The judgment and decree must be, and it is, reversed.—*Reversed.*

MORLING, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.