UTLEY & BOYNTON, Appellants, v. REUBEN DUNKEL-
BERGER *et al.*, Appellees; and HILLABRAND &
DYKES, Appellees, v. UTLEY & BOYNTON *et al.*,
Appellants.

Mortgages: RECORDED SIMULTANEOUSLY: ACCEPTANCE: PRIORITY OF
LIENS.   Two mortgages on real estate were executed by D. on the
same day to the firms of U. & B. and H. & D., both nonresidents, and
by him filed for record at the same time, and a draft drawn on each
firm for the amount of their respective mortgages.   Neither of said
mortgagees had agreed to accept the mortgage thus executed, and
the delivery to the recorder was not authorized.   The firm of H. &
D., however, had previously agreed to loan D. the amount of the
draft made on them, with the understanding that the same was to
be secured by first mortgage, and paid said draft in the belief that
said mortgage was according to said agreement, a day before the
mortgage to U. & B. was accepted by said firm.   The mortgage to
U. & B. was forwarded to them without any previous negotiation or
agreement, and a letter was received with the same which informed
them that a similar mortgage had, on the same day, been executed
to H. & D.   Without any investigation as to the question of priority
U. & B. accepted their mortgage, and paid the draft drawn upon
them.   *Held,* that the mortgage to H. & D. was superior in equity to
that of U. & B.

*Appeal from Marshall District Court.*—HON. J. L.
STEVENS, Judge.

THURSDAY, OCTOBER 20, 1892.

ACTION in equity to recover of Reuben Dunkel-
berger the amounts due on certain promissory notes,
and to foreclose mortgages given to secure their pay-
ment.   From a decree rendered after a hearing on
the merits, Utley & Boynton appeal.—*Affirmed.*

*Binford & Snelling*, for appellants.

*J. L. Carney*, for appellees.

ROBINSON, C. J.—For some time before March, 1888, the defendant, Reuben Dunkelberger, and his brother Lewis were engaged in the butter and egg business at Marshalltown. Utley & Boynton were dealers in produce in the city of Boston, and Hillabrand & Dykes were engaged in a similar business in the city of New York. In the month named, Reuben purchased the interest of Lewis in their business, and, for the purpose of raising money required to pay him, on the fourteenth day of that month made his promissory note to Utley & Boynton for the sum of three thousand dollars, with interest at six per cent. per annum, payable one year after date, and to secure it executed a mortgage upon portions of certain lots in Andrew's addition to the town of Marshall. At the same time Reuben made to Hillabrand & Dykes his promissory note, and executed a mortgage to secure its payment. The note and mortgage were in all respects, excepting the name of payee, the same as those given to Utley & Boynton. There was nothing in either mortgage to indicate that it was subject to another, and on the fifteenth day of March, 1888, the mortgagor filed both for record at the same time. On the next day he sent to each firm the note and mortgage drawn in its favor, and drew on it for the sum of three thousand dollars. The notes and mortgages were accepted by the respective mortgagees, and the drafts were paid. The notes not having been paid, separate actions were brought by the payees in October, 1890, to recover the amounts due on the notes, and to foreclose the mortgages. In November, 1890, the actions were consolidated, and a decree was thereafter rendered in favor of the respective plaintiffs for the amounts due on their notes, and for the foreclosure of the mortgages, but the mortgage to Hillabrand & Dykes was adjudged to be superior to that to Utley & Boynton. The parties in interest

appear to be satisfied with the amounts found to be due on the notes, and the only question presented for our determination is that of priority of liens.

About six months before the mortgages were executed, Reuben Dunkelberger told Hillabrand & Dykes that he contemplated purchasing his brother's interest, and asked if, in case he did so, the firm would lend him money on his first mortgage upon the property. He was answered in the affirmative, but nothing was said at that time in regard to the amount desired, nor the terms upon which it would be furnished. On the seventh day of March, 1888, Reuben wrote to Hillabrand & Dykes, informing them that he had purchased the interest of his brother in the business, and asking for a loan of five thousand dollars. An answer was returned three days later, with an offer to advance three thousand dollars on mortgage. On the nineteenth day of March, 1888, Hillabrand & Dykes received the note and mortgage designed for them, and on the same day paid the draft which had been drawn on them by their certified check. Several days before that date they wrote to certain attorneys in Marshalltown in regard to the lien of the mortgage, but received no reply until the morning of March, 20, when they were informed by telegraph that their mortgage was not a first lien. It was then too late to recall their check. In the correspondence which passed between them and the mortgagor nothing had been said about their receiving only a first mortgage, but they intended to accept only a first mortgage. The conversation which took place six months before gave them reason to believe that they would receive a first mortgage, and the fact that the attorneys to whom they had written had not informed them that there was other incumbrance on the mortgaged property when the draft was presented, although there had been time in which such information could have been given, led them to believe

that the mortgage to them created a first lien on the property therein described, and they paid the draft in that belief without actual knowledge that there was any other incumbrance on the property.

The note and mortgage to Utley & Boynton were forwarded to the mortgagees without any previous agreement, and, so far as the record shows, without any previous negotiations between the parties. The first information Utley & Boynton had of them was obtained from the letter which transmitted them, which is as follows:

"MARSHALLTOWN, IOWA, March 6, 1888.

"*To Utley & Boynton, Boston:*

"No mail yet from you. After writing you this A. M., I drew on you this P. M. for three thousand dollars. Inclosed find note and mortgage for the above. I trust and hope you will find everything right. Please pay draft, and, if everything not right, write me. The two packing houses and stuff on hand invoiced for ten thousand, nine hundred and thirty-four dollars and four cents. Then I have agreed to give Lewis two thousand dollars for his good will. Give him to-day a check for seven thousand four hundred and sixty-seven dollars and two cents.      "Yours, truly,

"R. DUNKELBERGER."

"I drew three thousand dollars on Hillabrand & Dykes to-day. Gave them note and mortgage same as yours, within same day. Is all there is on the two houses.                                    R. D."

The note and mortgage were received and the draft drawn against them was accepted by Utley & Boynton on the twentieth day of March, 1888, on the day after the note and mortgage to Hillabrand & Dykes were accepted by them. It thus appears that Utley & Boynton received the note and mortgage made to them with actual knowledge that there was another incumbrance on the mortgaged property.

It is contended by the appellants that, as the mortgages were executed at the same time, and filed for record at the same time, neither can be superior to the other, and that they are governed by the rule announced in *Koevenig v. Schmitz*, 71 Iowa, 176, and followed in *Stanbrough v. Daniels*, 77 Iowa, 566. It was held in the case first cited that the delivery of the mortgages was accomplished when they were filed for record, but the fact of this case do not bring the mortgage in question within that rule. Neither party agreed in advance to accept the mortgages which were executed, and their delivery to the recorder was not authorized. For some purposes the acceptance of the mortgages would amount to a ratification of their delivery to the recorder, but the filing of the mortgages cannot be given the effect of a delivery for the purpose of settling the respective equities of the mortgagees. Hillabrand & Dykes had authorized the execution of a mortgage substantially like that which they received, but they were under no obligation to accept one which was not a first lien upon the mortgaged property. Their rights became fixed by their acceptance of the mortgage on the nineteenth day of March, 1888. The execution of the mortgage to the appellants and its delivery to the recorder were at the time wholly unauthorized, and their acceptance of it on the twentieth day of March was necessarily subject to all the rights of Hillabrand & Dykes of which they had knowledge or notice. It is true the letter of the mortgagor did not inform them that their mortgage was junior to the other, and, if they had consulted the records, they would have learned only that the mortgages were filed at the same time; that the one to Hillabrand & Dykes was the first actually recorded, and that neither mortgage was in terms made subject to the other. But their investigation should not have stopped there. They were told by the letter of Dunkelberger that he had given to Hillabrand & Dykes a

note and mortgage which were the same as theirs, and written on the same day; but they knew they were not parties to any agreement with Hillabrand & Dykes, and had no reason to believe that they intended to accept a mortgage which was not a first lien on the mortgaged premises, and, had proper inquires been made, the facts would have been ascertained. The record shows the following:

*First.* Neither mortgagee had any representative in Iowa. In accepting the mortgage, Hillabrand & Dykes relied upon their previous conversation and correspondence with the mortgagor, and Utley & Boynton relied upon the letter transmitting the note and mortgage to them.

*Second.* When Hillabrand & Dykes accepted their mortgage it was in fact the first and only incumbrance on the mortgaged premises. At that time the other mortgage had not been authorized nor accepted by Utley & Boynton, had not been delivered, was wholly unknown to them, and had conferred upon them no right, excepting the right to accept it. It was not at that time an existing lien on the premises therein described, and the mortgage to Hillabrand & Dykes was in fact what they supposed it to be,—a first mortgage.

*Third.* When the appellants accepted the mortgage to them it was with knowledge that Hillabrand & Dykes held a mortgage which might be the first lien on the mortgaged premises. Yet they made no investigation, but voluntarily paid the draft which had been drawn against them, and therefore took the mortgage subject to all the rights which Hillabrand & Dykes acquired under the mortgage to them.

The conclusion to be drawn from these facts is evident. The equities of the respective mortgagees are not equal, and the district court rightly adjudged that the mortgage of Hillabrand & Dykes is superior to that of the appellants. AFFIRMED.