FARMERS NATIONAL LIFE INSURANCE COMPANY OF AMERICA, Appellee, v. ED RYG et al., Defendants; A. O. HAUGE, Guardian, Appellant.

No. 39998.

DECEMBER 13, 1929.

*E. S. Tesdell,* for appellant.

*Donnelly & Lynch,* for appellee.

ALBERT, C. J.—The defendant Ed Ryg purchased the land in controversy in 1903. There then existed against said land a mortgage of $4,000. On the 30th day of November, 1921, the  defendant and his wife executed a mortgage for $9,000 to the Midland Mortgage Company, which mortgage was duly delivered and recorded, and on the 14th day of December, 1921, it was sold for full value to the plaintiff herein. Defend-

ants defaulted in paying interest and taxes, and under the terms of the mortgage, plaintiff elected to declare the same due.

The only appeal taken in this case is by A. O. Hauge, guardian of Susan Ryg, the wife of Ed Ryg. The answer of the guardian to plaintiff's petition, after denying want of sufficient information to form a belief, alleges that, many years prior to the making of said mortgage, his ward, Susan Ryg, became insane, and that she has never since recovered, but has been insane and incapable of understanding or transacting any business, and that such was her condition at the time plaintiff's mortgage was alleged to have been executed. It further alleges that, for many years prior to the making of this mortgage, the land in controversy was occupied as a homestead by Ed and Susan Ryg, and was so occupied at the time of the suit.

The guardian filed a cross-petition, alleging substantially the matters set up in the answer, and charging that the Midland Mortgage Company, through threats, coercion, and duress of its local loan agent, procured the signature of the said Susan Ryg to the mortgage and notes in controversy herein. The cross-petition re-alleges allegations of insanity, and further says that the mortgage and notes are invalid, and not a lien against the real estate.

Two questions of fact may well be disposed of at this point: It is the claim of the appellant that his ward and her husband had a homestead right in the land in controversy. This may be conceded, for the purposes of this opinion.

When this loan was made, Ed Ryg had a talk with one Rawson, cashier of a local bank, advising him, in substance, that he (Ryg) wished to refinance his farm, and inquired whether Rawson could procure a loan of $9,000 for him. Thereupon, Rawson entered into correspondence with the Midland Mortgage Company, and they agreed to make the loan, and sent a blank application, which was duly filled out by Rawson. Later, the company forwarded the mortgage and note, ready for execution. It is the claim of the defendant that Rawson was the agent of the Midland Company in the making of this loan, and that, therefore, what knowledge he had was the knowledge of the company. We have reviewed the record with care, and are disposed to agree with the finding of the district court that Rawson was at all times

the agent of Ryg, and not the agent of the Midland Mortgage Company.

The question is also raised as to whether the evidence in the case shows that Susan Ryg was insane. We have reviewed the evidence on this question, and are willing to accept the finding of the district court that at all times in controversy herein she was insane.

Under the record in this case, we find that the plaintiff purchased the said mortgage and note from the Midland Mortgage Company a few days after the Midland Company acquired the same, for full value and before maturity, and without knowledge or information on its part of any defect in the title.

We are, therefore, confronted with the question, where a person is insane at the time of signing a mortgage and negotiable note, and this mortgage and note pass into the hands of a third party for full value before maturity, and without any knowledge on the part of the third party of defects in the title, whether the said third party stands in the position of an innocent purchaser.

In the case of *Preston, Kean & Co. v. Case & Co.*, 42 Iowa 549, we follow a pronouncement of the United States Supreme Court and quote from *Carpenter v. Longan*, 16 Wall. (U. S.) 273, in the following language:

" 'The assignee takes the mortgage as he takes the note, free from the objections to which it is liable in the hands of the mortgagee.' "

In the case of *Clasey v. Sigg*, 51 Iowa 371, we said: "* * * the *bona fide* assignee of a note and mortgage, without notice of infirmities, was not affected thereby,"—quoting from *Preston, Kean & Co. v. Case & Co.*, supra, and *Farmers' Nat. Bank v. Fletcher*, 44 Iowa 252.

That this doctrine is not peculiar to this state, see 27 Cyc. 1324, where it is said:

"But the rule generally recognized is that the mortgage follows the debt as a mere incident, and shares the immunity of the note from defenses and equities, so that, in proceedings to enforce the mortgage, nothing can be alleged against it which could not have been set up in defense to an action at law upon the note."

Cases from various sister states are there gathered in Note 80.

As aiding us in reaching this conclusion, see *Ashcraft v. De Armond,* 44 Iowa 229; *Lunt v. Neeley,* 67 Iowa 97; *Burch v. Nicholson,* 157 Iowa 502; 46 A. L. R. 413, and notes.

The defendant could not plead the insanity of Mrs. Ryg as a defense to the foreclosure.

The next step is to determine whether or not the negotiable promissory notes given with this mortgage were subject to be defeated by reason of the insanity of the wife. We have lately  discussed this question in the case of *First Nat. Bank v. Sarvey,* 198 Iowa 1067, l. c. 1069, where we said, speaking of the notes in controversy in that action:

"They were executed, and it is shown that they were fair and reasonable, made in the usual course of business, and that the alleged mental condition of the contracting party was not known to the plaintiff; nor was the plaintiff put *in statu quo.*"

We there held that the defendant had the burden of proving, not only the insanity, but that the payee of the note had express or implied notice of such fact; and that the *status quo* must be restored. This ruling is bottomed on the previous decisions of this court cited in the opinion. We have no disposition to recede therefrom.

As applied to the facts in this case, there is no showing whatever that the plaintiff had any knowledge of the insanity or mental incapacity of Susan Ryg at the time these notes were executed, or at the time it became the purchaser thereof. The defense of insanity, therefore, as against the notes themselves, must fail.

It is insisted, however, that, by reason of certain statutory provisions, this mortgage was invalid because Susan Ryg was insane at the time she signed the same. It might be said, in passing, that the mortgage specified a waiver of homestead rights. Section 10147, Code, 1927, provides: "No * * * incumbrance of * * * the homestead, if the owner is married, is valid, unless the husband and wife join in the execution of the same joint instrument * * *." The argument is that, because of Susan Ryg's insanity at the time of making this mortgage, she was incapa-

citated from signing the same, and that, therefore, she did not in law sign the mortgage; hence, under the above statute, it is invalid.

In the case of *Abbott v. Creal,* 56 Iowa 175, we had a set of facts identical with the facts before us. In that case it was conceded that the wife had not sufficient mental capacity to contract at the time the mortgage there in question was executed, and there, as here, it was insisted that the mortgage was void as to the homestead. We there said:

"It has been settled as the law of this state that persons of unsound mind will be held liable as to executed contracts where the transaction is in the ordinary course of business, is fair and reasonable, and the mental condition was not known to the other party, and the parties cannot be put *in statu quo. Behrens v. McKenzie,* 23 Iowa 333; *Ashcraft v. De Armond,* 44 Id. 229. It is claimed, however, that, under Section 1990 of the Code [Section 10147, Code, 1927], a conveyance or incumbrance of the homestead is of no validity unless the husband and wife concur in and sign the same joint instrument, and that, as Amanda Creal was mentally unsound, she could not concur in the mortgage, and hence no incumbrance of the property was effected. This reasoning would invalidate all contracts of persons of unsound mind, for it is essential to the validity of a contract that there should be a concurrence of the minds of the contracting parties. The very point in controversy was determined adversely to the position of appellant in *Ashcraft v. De Armond,* supra; for a portion of the land involved in that case, and to which the deed of conveyance was upheld, was the homestead of the party whose mental unsoundness was alleged, and, for the purposes of the decision, conceded. Following that case, the decree in this must be affirmed."

There has been some dictum in our cases (see *Alexander v. Vennum,* 61 Iowa 160, and *First Nat. Bank v. Bryan,* 62 Iowa 42), but we find no case in which the doctrine laid down in the *Abbott* case has been overruled. The case of *Alexander v. Vennum,* supra, is in conflict with the doctrine laid down in the *Abbott* case, but we are disposed to think that the doctrine in the *Abbott* case is a more just, logical, and wholesome one, and we are disposed to, and do, follow it in this case, and hold that

the ruling of the district court on this question was right.— *Affirmed.*

EVANS, FAVILLE, DE GRAFF, and KINDIG, JJ., concur.