FEDERAL LAND BANK OF OMAHA, Appellant, v. LILLIAN SHER-
BURNE et al., Appellees.

No. 40815.

DECEMBER 16, 1931.

W. C. Shepard, E. F. Dougherty, and Byron B. Oberst, for appellant.

Sager & Sweet, for the defendants, W. C. Steege, E. H. Martin and John H. Mueller.

Edwards, Longley, Ransier & Harris, for the defendant-appellee, Wilhelmine Justine Steege.

KINDIG, J.—On and before February 28, 1920, Louis Yarcho owned 160 acres of land in Butler County. This real estate consisted of two eighty-acre tracts. Some time before that date, Yarcho sold one eighty-acre tract of that land to the defendant Lillian Sherburne, his daughter. At the same time, Yarcho sold the other eighty acres of the farm to his son-in-law, the defendant W. S. Sherburne. Said Sherburne and Lillian Sherburne were husband and wife.

In order to carry out the project, it was necessary for the Sherburnes to borrow money to pay Yarcho the purchase price of the land. Hence, in order to procure part of the money, the Sherburnes made application to the plaintiff-appellant, the Federal Land Bank, of Omaha, Nebraska, for separate loans, to be secured on the respective eighty-acre tracts. Lillian Sherburne obtained a loan from appellant, on the mortgage and note involved in the case at bar, for $5,000. She and her husband, W. S. Sherburne, on March 2, 1920, executed such note and mortgage. Simultaneously W. S. Sherburne obtained a loan of $6,100 from appellant on his eighty-acre farm, secured by a

mortgage not involved in this controversy. Both mortgages thus given by the Sherburnes to appellant were recorded March 8, 1920. Through the two mortgages, the Sherburnes procured $11,100 in cash with which to partly pay Yarcho for the land purchased in the manner and way above described. There was still due Yarcho on the purchase price of the farm, after applying the aforesaid moneys received from appellant, a balance of $16,477.50. So, in order to satisfy that balance, the Sherburnes executed a third note and mortgage to Yarcho. The last-named note and mortgage were executed on February 28, 1920. Thus it appears that the Yarcho note and mortgage predated appellant's notes and mortgages. Following the execution of the foregoing instruments, the several mortgages were recorded.

Yarcho's mortgage was recorded March 2, 1920. Therefore it is obvious that appellant's mortgages were recorded six days later than the mortgage held by Yarcho. It is seen, then, that Yarcho's mortgage was both dated and recorded before the mortgages held by appellant. Apparently it was the intention of Yarcho, the Sherburnes, and appellant that the latter's mortgages were to be a prior lien upon the land in question. This fact is indicated by the testimony. A bank at Shell Rock, Iowa, appears to have handled the Yarcho-Sherburne mortgage and recorded it by mistake before appellant's mortgages were placed on record. During this time, E..H. Martin and John H. Mueller were operating the Tripoli State Bank, at Tripoli, Iowa. In addition to the banking business, they apparently were in partnership under the name of Martin & Mueller. That partnership, it seems, among other business transacted by it, bought and sold commercial paper.

After the execution of the foregoing notes and mortgages, this firm of Martin & Mueller negotiated for and obtained Yarcho's aforesaid $16,477.50 note and mortgage. They were the owners of a farm near Hawkeye, Iowa, in November, 1921. Yarcho at the same time owned a farm near Denver, Iowa. An exchange of lands was proposed, and, after some negotiations between Yarcho and the firm of Martin & Mueller, the parties reached an agreement. As a result, Yarcho transferred the Denver farm to Martin & Mueller and they, in turn, conveyed the Hawkeye farm to the former. Out of that transaction Mar-

tin & Mueller obtained Yarcho's note and mortgage above described. Through the transaction aforesaid, Martin & Mueller, according to the record, paid a legal and full consideration for the note and mortgage.

Wilhelmine Justine Steege, the defendant-appellee, at this time was transacting business with the Tripoli Bank and Martin & Mueller. She had money to invest, and Martin & Mueller sold her the Yarcho mortgage of $16,477.50 on March 25, 1922. When the purchase was made, the note secured by the mortgage had not matured. Appellee paid for the note and mortgage $16,477.50 in cash, believing that she obtained a first lien on the real estate covered thereby. Whether Martin & Mueller knew this mortgage was second to that held by appellant is not clear. They claim to have learned that fact after the transfer of the instrument to appellee. Probably they knew thereof before. However that may be, they did not inform appellee that the mortgage she purchased was in any way inferior to that held by appellant. Contrary thereto, Martin & Mueller, after examining the public records where the mortgages were recorded, particularly told appellee that the mortgage she purchased was a first lien on the real estate. There is nothing in appellee's mortgage to indicate that it is not a first lien. Moreover, the mortgage purchased by appellee was dated before the two mortgages held by appellant. Likewise appellee's mortgage was recorded before appellant's mortgages.

Martin & Mueller guaranteed the note and agreed to pay appellee five and one-half per cent interest thereon, although the instrument on its face bore only five per cent. Subsequently the Tripoli Bank went into receivership and Martin & Mueller apparently now are insolvent.

Following her purchase of the Yarcho note and mortgage, appellee placed the same in her deposit box in the Tripoli Bank. The note was properly endorsed. Sometime thereafter the formal assignment of the mortgage was executed by Martin & Mueller and likewise delivered to appellee. This instrument she also placed in her deposit box and kept it there without recording it until after the present suit was commenced, in April, 1929. In the meantime appellee received her interest regularly on the note, and there seemed to be no reason why she should have recorded the assignment.

During the interval, Martin & Mueller apparently pretended to Yarcho, the Sherburnes, and appellant, as well, that appellee's note was held by them. Also they led appellant to continue thinking that the $16,477.50 note was secured by a mortgage inferior to that held by the latter. When doing this, however, Martin & Mueller were acting without the knowledge or consent of appellee, nor did the partnership represent her in any way when making those representations.

After listening to the evidence, the district court decided in favor of appellee and declared her mortgage to be superior to the mortgages held by appellant. A reversal is asked by appellant on the following theories: First, because appellee had actual knowledge of the fact that appellant had a first mortgage; second, because her agent, Martin & Mueller, had actual knowledge of appellant's rights, and therefore through them appellee acquired the knowledge; third, because appellee through the records had constructive knowledge of the fact that appellant had a first mortgage; and, fourth, because appellee waived her right of priority by her actions subsequent to the time she acquired title to the mortgage. There is a dispute between the parties concerning whether or not the burden is upon appellee to show that she is a good-faith purchaser of the Yarcho note, appellant's theory at this juncture being that, the note having been put into operation in breach of faith, the burden is upon appellee to show that she is a good-faith purchaser thereof. Whether that is true or not, we do not now decide, but assume that appellee has the burden of proof.

I. Did appellee know when she bought the Yarcho note that the mortgage secured thereby was superior to the mortgages held by appellant? That is the first question.

Appellee is about seventy-one years of age, and acquired some property through her father's estate. She relied very largely upon bankers to select mortgage-secured notes which she might purchase. According to the record, appellee desired good, safe paper. On the occasion of her buying the Yarcho note, she was particular that the mortgage securing the same should be a first lien on the real estate. It is true that she did not inspect the real estate, but relied upon Martin & Mueller's judgment concerning the value thereof. Nevertheless she purchased the note and mortgage in the best of faith, and paid therefor a full

cash consideration. In order to procure sufficient funds with which to make the purchase, she borrowed $1,500 from the Tripoli Bank. The remainder of the funds appellee already had on deposit in the bank. From time to time interest was paid on the various mortgages held by her and permitted to accumulate until a sufficient fund existed to make a new purchase. That was the situation in the present instance. Manifestly appellee had no knowledge that the mortgage she obtained from Martin & Mueller was in any way inferior to the mortgages held by appellant. This conclusion is fully sustained by the record.

Although appellee did not receive an actual assignment of the mortgage until some weeks after she made the purchase, yet the note and the security were completely transferred to her, as before explained. She received both the note and the mortgage from Martin & Mueller and placed them in her deposit box. Assuming, contrary to the record, as appellant asks us to do, that title to the note and mortgage did not pass to appellee before the formal written assignment was actually executed and delivered to her, nevertheless the transaction certainly became complete when that was done, a few weeks later. There is no question, however, but that title to the note and mortgage passed to appellee when she paid the consideration therefor, received the instruments, and placed them in her deposit box before the formal assignment was made. Martin & Mueller concede, and appellee claims, that the title did thus pass to her at that time. Furthermore, it is argued by appellant that appellee must have had information concerning its superior mortgage because she did not place the assignment on record until after the suit was commenced. Obviously this argument can not be sustained. As before explained, appellee's mortgage was first dated and first recorded, and when she purchased it Martin & Mueller assured her that the same was a first lien on the land. Martin & Mueller, as before indicated, examined the public records in the county where these mortgages were recorded and found that appellee's mortgage was first both in date and time of recording. Thereafter, as already explained, Martin & Mueller told appellee when she purchased the note and mortgage that the same was a prior lien on the land. Appellee relied upon the fact that this mortgage was a prior lien when she purchased it. There is nothing in the mort-

gage itself, as previously indicated, to suggest that it is a second lien. While appellant received its mortgages under date of March 2, 1920, yet appellee's mortgage was recorded on that date at 9:10 o'clock A. M. Throughout the record it is indicated and taken for granted by the parties that appellee's mortgage was on record before appellant received its mortgages. Appellant did not plead or prove in the trial court that it received its mortgages before appellee's mortgage was recorded, and there is no claim in this court to that effect. See Miller v. Miller, 211 Iowa 901; Meredith v. Beadle, 211 Iowa 390; 19 Ruling Case Law, 408, sec. 187; 41 Corpus Juris 547, sec. 491. The parties adopted a theory upon which to try the case, but did not include therein the question whether appellant's mortgages were received by it before appellee's mortgage was recorded. It is upon the theory of the contentions made by appellant, herein set forth, that this case is discussed. Nevertheless, it is indicated by the entire record that appellee's mortgage was recorded before appellant received its mortgages.

Why, then, should appellee place her assignment on record if she did not so desire? So far as appellant is concerned, it is in no way harmed because appellee did not place her assignment on record, for the former had acquired its mortgages long before. Clearly, there is nothing in the fact that appellee under the circumstances did not record her assignment, to indicate that she knew her mortgage was inferior to those held by appellant.

Again it is said by appellant that appellee must have known that her mortgage was subsequent to that held by it, because Martin & Mueller recognized the inferiority in communications to appellant, as well as to Sherburnes and Yarcho. However, the appellee did not authorize or direct Martin & Mueller to so write to appellant or to Sherburnes and Yarcho. Neither did she have knowledge that those letters had been written. Apparently Martin & Mueller were attempting to have the Sherburnes pay appellee's mortgage, for possibly two reasons: First, because the partnership had endorsed the instrument and was paying an extra half per cent interest thereon; and, second, because appellee had been told it was a first lien and serious trouble might ensue were the deception discovered. Appellant did not change its position, nor was it in any way prejudiced because of anything done by appellee.

Finally, it is argued by appellant under this point that appellee must have known that her mortgage was second because she required the endorsement of Martin & Mueller. There are many reasons why she may have demanded this endorsement. First, they were paying her an extra one-half per cent interest on the loan. Then, too, the land consisted of only 160 acres, and appellee's mortgage amounted to more than $100 per acre. She might have considered that it was an overloan, and consequently would demand the endorsement of Martin & Mueller.

Other matters are argued, but we deem it unnecessary to continue the discussion. Under the entire record, therefore, it is apparent to us that appellee believed her mortgage superior to all other liens on the land. Nowhere is it shown that she knew anything of appellant's claim that its mortgages are first.

Section 9512 of our Negotiable Instrument Law provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That the instrument is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

As before explained, appellee's note is complete and regular on its face and she became the holder thereof before it was overdue. Moreover, as shown by the foregoing discussion, she took the instrument in good faith and for value. "At the time it was negotiated to" her she "had no notice of any infirmity in the instrument or defect in the title of" Martin & Mueller. Consequently appellee is the holder of the note in due course.

But appellant argues that this does not apply to the mortgage. Continuing its contention on this point, appellant claims that the mortgage was assigned by Martin & Mueller to appellee, and therefore it is subject to equities held by third parties. To put the thought differently, appellant claims that although the note may be free from such defenses, yet the mortgage is

not. For authority on this proposition it cites Sims v. Hammond, 33 Iowa 368. Something is said in that case justifying appellant's contention. Whether the point was squarely raised in the Sims case does not clearly appear. In any event, the apparent holding there has been repudiated by later decisions of this court. Preston, Kean & Co. v. Morris Case & Co., 42 Iowa 549; Des Moines Sav. Bank v. Arthur, 163 Iowa 205; Farmers National Life Insurance Co. of America v. Ryg, 209 Iowa 330. The thought is expressed in Preston, Kean & Co. v. Morris Case & Co. (42 Iowa 549) supra, by the following language:

" 'The assignee takes the mortgage as he takes the note, free from the objections to which it is liable in the hands of the mortgagee.' "

See also 41 Corpus Juris, 696, sec. 716.

By way of conclusion, then, appellee's mortgage is not subject to defenses of which she has no notice when becoming a good-faith holder of the note.

■ II. Regardless of the point raised in the foregoing discussion, appellant declares that appellee did have notice of its superior mortgages, because Martin & Mueller had such information.

Martin & Mueller, appellant insists, was the agent of appellee in purchasing the note and mortgage in question for her. They being appellee's agents in the transaction, their knowledge, appellant argues, would be her knowledge. Under the circumstances, we do not decide whether that is true, for Martin & Mueller were not appellee's agents in the transaction. It is doubtful whether they were her agents in procuring investments for her in any other transaction. Apparently she purchased notes secured by mortgages and Martin & Mueller collected the interest, acted as scriveners, etc. However that may be, it is apparent they were not her agents in the purchase of the note and mortgage now being considered. That note and mortgage were not purchased through Martin & Mueller. Rather than that, the instruments were purchased from them. What was said in the discussion under proposition I applies very largely under this point. A repetition of that discussion is not necessary here. The Yarcho note and mortgage were obtained by

Martin & Mueller through the land exchange before explained. Through that transaction Martin & Mueller obtained title to, and became holders of, the Yarcho note and mortgage. Thereafter, for a full and valuable consideration, as before explained, appellee purchased the note and mortgage from Martin & Mueller. Consequently, there was no agency involved. There being no agency involved, appellee could not receive notice on the theory suggested through non-existing agents.

III. Continuing its argument, appellant contends that appellee had constructive notice through the public records. By this appellant refers to the language of its own mortgages. These mortgages apparently recite that the premises covered thereby are "free of all incumbrances." Furthermore, appellant claims that the mortgage in question, being a farm loan bank transaction, requires an application with certain guaranties.

So in the present transaction, Yarcho in his application said the premises were free from incumbrances. All three mortgages having grown out of the same transaction, appellant asserts that appellee must have understood from the record of the Federal Land Bank mortgages that there would be such application, and had she pursued the information thus received, it would have been learned that the bank's mortgages were to be first. Again, appellant maintains that the Federal statutes require a mortgage taken by the Federal Land Bank to be first. Because of all those matters, appellant concludes, appellee had constructive notice that her mortgage was inferior to those held by the former. To sustain its proposition, appellant cites the following cases: Sims v. Hammond, (33 Iowa 368), supra; Powers v. Lafler, 73 Iowa 283; Shoemaker v. Smith, 80 Iowa 655; Utley & Boynton v. Dunkelberger, 86 Iowa 469; Albia State Bank v. Smith, 141 Iowa 255; Loser v. Savings Bank, 149 Iowa 672; Wertheimer & Degen v. Parsons, 209 Iowa 1241; Miller & Chaney Bank of Newell v. Collis, 211 Iowa 859; and other cases from foreign jurisdictions.

A study of the cases cited reveals that the principles therein announced do not apply under the facts and circumstances of this case. In some of the cited cases the mortgages were dated on the same day, while in others the instrument claiming to impart notice was in the chain under which title had been later

obtained by the person receiving the notice. Appellee's mortgage, as repeatedly stated, was dated before those received by appellant. Likewise appellee's mortgage was recorded before the instruments held by appellant. When appellee purchased her mortgage, appellant's mortgages were not in the chain of title. Upon an investigation of the record, appellee naturally would find that her mortgage was first both in date of execution and time of recording. She had a right to rely upon that record. This subject was considered by this court in Vandercook v. Baker, 48 Iowa 199. There we said, reading on page 205:

"The priority of the mortgages is to be determined by their registration, not by their form or provisions. We have never heard that covenants in a mortgage would impart notice that it should be treated as a lien prior to other instruments filed before it."

See also New Jersey Title, Guarantee & Trust Co. v. Jersey Co-operative R. Co., 110 Atl. (N. J.) 109; Clarke v. Cowan, 92 N. E. (Mass.) 474; Hall v. Williamson Grocery Co., 72 S. E. 780 (W. Va.). Section 10115 of the present Code, similar to a corresponding section in the 1897 Code, contains the following applicable provision:

"The recorder must indorse upon every instrument properly filed for record in his office, the day, hour, and minute of such filing, and forthwith enter in the index book the entries required to be made therein, except the book and page where the complete record will appear, *and such filing and indexing shall constitute constructive notice to all persons of the rights of the grantees conferred by such instruments.*" (The italics are ours.)

When appellee, then, in the case at bar, before purchasing the note and mortgage in question, learned through Martin & Mueller (not as her agents, but as owners and vendors of the note and mortgage), who had inspected the records in the county recorder's office where the respective mortgages were recorded, that the mortgage about to be purchased by her was, in fact, first in date and first of record, she safely could rely upon the information revealed by that record. See Mandel v. Siverly,

213 Iowa 109. As already stated, appellant did not plead or prove in the district court, nor does it now claim, that its mortgages were received before appellee's mortgage was recorded. Hence that question is not in the case.

Therefore, in view of the statute and the cases above cited, the recitations in appellant's mortgages imparted no notice to appellee under the facts and circumstances here involved.

IV. Finally, appellant contends that appellee waived her right of priority by actions subsequent to acquiring her mortgage, and is now estopped from asserting the inferiority of appellant's mortgages. Three thoughts are involved in this contention. They are: First, the repetition of appellant's aforesaid claim that appellee had knowledge of its mortgages when she purchased her mortgage in question; second, if she did not have such knowledge, that she later waived her right of priority through her agents, Martin & Mueller; and, third, that by such conduct she has estopped herself.

It will not be necessary here to again reiterate all the discussion upon the proposition that appellee did not know when she purchased her mortgage that appellant claimed its mortgages were superior thereto. That proposition has been fully disposed of in Division I of this opinion. But appellant further argues that even though appellee did not have such knowledge when she bought her mortgage, she afterwards learned of appellant's claim and acquiesced therein. Thereby appellant says appellee waived the right to claim her mortgage superior to that held by it. Such waiver contended for by appellant is based upon the following facts: John Mueller, of the Martin & Mueller firm, appellant declared, knew the latter's mortgages were superior to the one purchased by appellee. Appellant follows this declaration with the claim that Mueller was appellee's agent who purchased the Yarcho mortgage and note for her. Thereafter, the alleged agent Mueller, appellant asserts, admitted in writing that appellee's mortgage was inferior to those held by appellant. Furthermore that alleged agent paid interest on appellant's mortgages and stated at the time that such interest payments were made by the appellee to protect her first mortgage. Under that state of facts, appellant says that its claim is sustained by the following authorities: Newgirg v.

Black, 174 Iowa 636; McDaniel v. Bankers Life Co., 210 Iowa 1279.

Conceding without determining that the authorities cited are applicable to the facts assumed by appellant, yet such supposed facts do not conform to the present record. There is no basis in the record to sustain the supposition. As indicated by the previous discussion, there was no relationship of agency between Martin & Mueller and the appellee. Whatever Martin & Mueller, or Mueller himself, may have written to appellant, Yarcho, or the Sherburnes was entirely on his own behalf, without the knowledge or authorization of appellee. She made no such representations or concessions in writing or otherwise. Although Martin & Mueller may have paid the interest on appellant's mortgages, appellee did not do so, nor is it shown that she knew Martin & Mueller made the payments. Obviously appellee has not waived her right to claim the superiority of the Yarcho over appellant's mortgages.

 Consideration will now be given to appellant's claim of estoppel. A motion was made by appellee to strike certain portions of appellant's pleading containing the alleged allegations of estoppel. Complaint is made of that here.

When considering this proposition, we are assuming that all the allegations are present in the pleading, without deciding whether the district court erroneously excluded certain parts thereof. Even then there is not a sufficient pleading of estoppel. What is pleaded amounts merely to a conclusion. No facts are set forth giving rise to the estoppel. It is not claimed that appellant was misled or in any way changed its position because of any matters stated as an estoppel. More than that, there is no proof that appellant was misled or prejudiced. Nor does it appear that appellant in any way changed its position because of anything said or done by appellee. Without such proof there can be no estoppel. Barnett v. First Nat. Bank, 148 Iowa 667; Stephens v. Boyd, 157 Iowa 570; McCreary v. McGregor, 183 Iowa 732; Koontz v. Iowa City State Bank, 183 Iowa 1353; Harris v. Warner, 199 Iowa 1000; Hamaker v. Johnson, 199 Iowa 1298.

Because of all the circumstances, then, the district court

correctly decided in appellee's favor, and its judgment and decree should be, and hereby is, affirmed.—Affirmed.

FAVILLE, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.