ROBERT LONG, Administrator, Appellant, v. JAMES T. TAGGART et al., Appellees.

No. 41406.

JUNE 24, 1932.

H. T. Pressly and L. H. Mattox, for appellant.

William A. Turner, Paul L. Millhone, Stephens & Thornell, and George A. Anderson, for appellees.

STEVENS, J.—The record presents and involves a large number of transactions, a complete narrative of which is indispensable to an intelligent understanding of the controversy, as well as a proper decision of the questions before us. In the fall of 1918, Thomas J. Long, single, conveyed a tract of land consisting of 240 acres, located near College Springs, in Page County, to James T. Taggart for a consideration of $45,000. $1,500 was paid in cash on the date of the sale, $14,000 on March 1, 1919, upon the delivery of the deed, and a first mortgage for the remainder of the purchase price, $30,000, was executed by the purchaser. Both the deed from Long to Taggart and the mortgage from Taggart to Long were filed for record in the office of the recorder of Page County March 12, 1919. The $1,500 payment was made from funds borrowed by Taggart from the First National Bank of College Springs, of which W. S. Farquhar was president. In the spring of 1919, Taggart obtained a further loan from the First National Bank of $7,500. This sum constituted a part of the $14,000 paid by Taggart to Long on March 1st. On December 8, 1924, James T. Taggart and wife executed a note for $9,060, the amount of the prior advances, to the First National Bank of College Springs, together with a mortgage upon the 240-acre tract previously referred to, to secure the payment thereof, which mortgage was duly recorded on December 12, 1924. The notes evidencing this indebtedness, but not the mortgage, were several times renewed by Taggart. The $9,060 at the time of one of the renewals was divided into one note of $5,000, two notes of $1,500 each, and a note of $1,000. At the time of the trial, the $1,000 note was held by the appellee Wyckoff, the $5,000 note by the appellee Citizens State Bank, and the remaining notes by the appellee Page County State Bank, all of Clarinda, Iowa.

On and prior to the first day of March, 1925, Taggart was in default in the payment of interest on the $30,000 note to Long. On the above date, new notes at a reduced rate of interest and a new mortgage were executed by Taggarts to Long. Contemporaneously with the execution of these instruments, the Taggarts also executed a warranty deed conveying the mortgaged premises to Thomas J. Long, which by its terms was subject to the $9,060 mortgage to the First National Bank. This deed, with a written memorandum signed by the Taggarts only,

was left at the First National Bank to be held by it pending further payments by the Taggarts upon the $30,000 indebtedness. On March 12, 1925, Thomas J. Long, on the margin of the record in the recorder's office, released the $30,000 mortgage executed on or about March 1, 1919, as security for that portion of the purchase price of the land. Subsequently, and on September 1, 1928, the Taggarts executed a new mortgage on the same real estate to Thomas J. Long, which was filed for record September 1, 1928. The note, however, executed at this time was for $29,500. The difference in the amount resulted from a transaction involving some insurance received on account of the destruction of the dwelling by fire. Neither of the two later mortgages executed by Long referred in any way to the $9,060 mortgage executed in 1924 by the Taggarts to the First National Bank. In June, 1925, the appellee Wyckoff purchased the $1,000 note previously referred to of the First National Bank, paying value therefor. This note was subsequently repeatedly renewed by Taggarts, the last renewal being at the time of the commencement of this action held by Wyckoff. One of the $1,500 notes was transferred to the appellee Page County State Bank January 25, 1927, and the other a few days later. The remaining note of $5,000, which represented a part of the original indebtedness of $9,060, was, on September 12, 1929, transferred to the appellee Citizens State Bank of Clarinda; and on the same day, the original mortgage given to the First National Bank to secure the above indebtedness was assigned to said bank, and the assignment promptly and duly placed of record in the county recorder's office.

Thomas J. Long died after the trial of the cause in the district court, but prior to the entry of the decree, and the appellant, Robert Long, administrator, was substituted as plaintiff. The petition was filed October 13, 1930. It is in the usual form of a petition in equity upon a promissory note and for the foreclosure of a mortgage upon real estate. All of the appellees are made defendants in this action and each filed separate answer and cross-petition, praying the foreclosure of the original mortgage to the First National Bank.

It is alleged in the petition that W. S. Farquhar was president of the first National Bank and its predecessor, the Farquhar State Bank, and that all of the transactions had by Thomas J.

Long with Taggarts were conducted upon the advice and under the directions of the said Farquhar; that each and all of the notes and mortgages, together with the deed and memorandum agreement previously mentioned, were prepared by Farquhar; that Long never at any time read or examined the instruments, but relied upon Farquhar, whom he had known from boyhood, and with whose banking house he had always done business, as possessing the requisite knowledge and information to execute the instruments in due and proper form and with regard to his rights in the matter. The mortgage sought to be foreclosed is the one executed September 1, 1928. It is further alleged that Long first learned of the existence of the mortgage executed by Taggarts to the bank to secure the notes aggregating $9,060 long after the several mortgages previously referred to had been executed by Taggarts to him; that he was not informed by Farquhar or anyone else that a release of the original mortgage executed to him of record would give apparent priority of the second mortgage held by the bank, and that at no time did he intend to give priority to such mortgage; and that if he had been informed of the facts he would not have released his original mortgage, which he did in the presence of Farquhar, who had arranged to have the release written on the margin of the record. It was further alleged in the petition that the original mortgage given to Long was for a part of the purchase price of the land sold to the mortgagor.

Each of the holders of the notes above described and the assignee of the $9,060 mortgage in their separate answers and cross-petitions set up the facts already stated, alleging priority of the mortgage securing the notes held by them, and prayed the establishment thereof as a first lien upon the mortgaged premises, together with a decree of foreclosure. Long joined issue upon each of the cross-petitions, denying knowledge of the mortgage referred to therein, repeating the allegations of fraud and deceit on the part of Farquhar, and asking that the mortgage held by him be established as a first lien upon the premises and foreclosed as such. Upon the issues thus joined, a trial was had to the court, resulting in a decree as previously stated.

As appears from the foregoing narrative of the facts, at the time the $30,000 mortgage was executed by Taggarts to Long, it was for purchase money, and constituted a first lien

upon the mortgaged premises. This status continued until the release of said mortgage on the margin of the record in the county recorder's office on March 12, 1925, on which date the first renewal mortgage was filed for record. From that date forward, the $9,060 mortgage held by the First National Bank appeared of record as prior and senior thereto. The record in this respect was in no wise changed by the execution and recording of the second renewal mortgage in 1928, at which time the next prior mortgage to Long was duly released. The priority of the mortgage to the First National Bank thus apparently obtained is asserted by the holders of the several notes secured thereby: that is, by the appellees who are the cross-petitioners in this action. All of the notes transferred to appellees were upon the representations of Farquhar that they were secured by a first mortgage on the 240-acre tract. It is the contention of appellant, as appears from the allegations of the petition, that Long and Farquhar have known each other and been friends since their boyhood; that Long did all of his banking business at the First National Bank of College Springs and its predecessor, the Farquhar Savings Bank; that Farquhar prepared all of the instruments and documents involved in this action for Long, who testified that he never saw or examined them, but relied wholly upon Farquhar to execute them in due and proper form and in accordance with the facts well known to him. Farquhar, who was called as a witness on behalf of appellees and for himself, admitted that he did not at any time inform Long that his bank held a second mortgage on the land. The warranty deed executed by Taggarts to Long and left at the First National Bank excepted the $9,060 mortgage from the covenants. Farquhar testified that this clause was inserted in the deed in response to the insistent demand of Taggart. He said nothing to Long about it. The memorandum prepared at the same time and signed by Taggarts recites that the $30,000 mortgage is a first lien on the land. If this document was shown to and read by Long, it would have tended to completely mislead him as to the provisions of the deed. The sole purpose of the execution of the deed was to provide that, in the event Taggarts subsequently defaulted in the payment of interest on the $30,000 note, the deed might be recorded and the expense of foreclosure avoided. The memorandum of agreement provided

for the delivery of the deed to Long upon the happening of such event. It may or may not be significant that this clause was inserted in the deed after the draft had been completed upon a typewriter containing a different-colored ribbon. The explanation of Farquhar is a reasonable one and probably true. Farquhar knew full well, however, that Long would not have accepted a deed executed merely for the purpose of saving the expense of foreclosing the mortgage containing a clause to the effect stated. He must also have known that Long would not have released the original mortgage to him, which was a first lien upon the land, if he had known either of the existence of the mortgage to the bank or of the effect of the release which Farquhar seems to have directed, or at least participated in. The principal advantage of the clause in the deed, if it had been delivered, would have accrued to the First National Bank, and the only possible advantage accruing to anyone by the release of Long's original mortgage was to Farquhar's bank. It is difficult to avoid the inference that an unfair advantage was consciously obtained by Farquhar of Long. In view, however, of the conclusion which the court must reach in this case, we shall, for the purposes thereof, assume, rather than hold, that the fraud alleged in the petition is made out by the proof.

Based upon the assumption thus indulged, the result necessarily follows that the lien of appellant's mortgage must, as between him and the First National Bank, be treated as senior and prior to the mortgage formerly held by it.

This result does not, however, dispose of the case. There is no defect or infirmity in either of the mortgages or in the title to the notes respectively secured thereby. No defense of any kind is interposed by the makers to either the notes or the mortgages.

The sole remaining issues to be determined are those involving the legal and equitable rights of the several appellees under the mortgage of the First National Bank assigned to the Citizens State Bank of Clarinda. The record shows without dispute that the appellee Wyckoff purchased the $1,000 note held by him before maturity for value without notice, constructive or actual, of any of the facts alleged and relied upon by appellant. Credit was given in the name of Farquhar by the Page County State Bank for the two $1,500 notes transferred to it. The president

of this bank testified that Farquhar represented to him that these notes were secured by a first mortgage upon 240 acres of land in Page County. The record so indicated. On September 12, 1929, the assets of the First National Bank of College Springs were, in pursuance of a written agreement between the parties, taken over by the appellee Citizens State Bank and some or all of the obligations thereof assumed thereby. Accompanying the other assets were the $5,000 Taggart note and the mortgage given to secure the payment thereof. It was then that the mortgage was duly assigned to the bank. The transfer of the several notes to the respective parties, holders thereof, carried with it the mortgage security, together with the right to foreclose the same. Robertson v. Stock Co., 164 Iowa 230; Preston, Kean & Co. v. Morris Case & Co., 42 Iowa 549. This is the settled rule in this jurisdiction. It is likewise well settled that one who receives a mortgage in good faith for a valuable consideration without notice of any infirmities in its inception takes it relieved of such infirmities as may in fact exist. Robertson v. Stock Co., supra; Farmers National Life Ins. Co. v. Ryg, 209 Iowa 330; Federal Land Bank of Omaha v. Sherburne, 213 Iowa 612.

It appears from the record that Hugh Miller, president of the Page County State Bank, was a stockholder and a member of the board of directors of the First National Bank of College Springs. He usually attended the directors' meetings and was probably more or less familiar with the assets and condition of the bank, but had nothing to do with the actual business of the bank. There is nothing whatever tending in any way to show that he ever had any personal knowledge of the fraud and deceit alleged to have been practiced by Farquhar upon Long. He knew no fact that he could have communicated to the transferee bank of which he was president.

The purpose of the recording laws is to provide notice to the world of conveyances and incumbrances upon real property. In the absence of knowledge or notice of some fact or circumstance that should have charged the Clarinda State Bank with notice of the fraud alleged, its officers had a right, at the time it purchased the notes, to rely upon the record, which, as stated, indicated that the lien of the mortgage to the First National Bank was prior and senior to the lien of appellant's mortgage.

948

Farmers Nat. Life Ins. Co. v. Ryg, supra; Federal Land Bank of Omaha v. Sherburne, 213 Iowa 612.

The Citizens State Bank of Clarinda paid value for the $5,000 note before maturity and without notice of the matters relied upon by appellant. It thus appears that appellees are the holders in due course of certain negotiable promissory notes secured by the mortgage to the First National Bank. They are fully protected by the constructive notice imparted by the record of the respective mortgages. It will be observed that substantially five years elapsed after the original mortgage to Long was released before this action was begun. Accepting the statements of Long that he had no actual knowledge of the status of the record resulting from the acts of Farquhar as true, nevertheless he was somewhat lacking in diligence in his failure to examine and inform himself of the contents of the respective instruments prepared by Farquhar and executed by Taggarts to him. The rights of innocent persons who have relied upon the record have intervened.

But one conclusion may be reached in this case, and that is that the decree establishing and foreclosing the lien of the mortgage relied upon by appellees and foreclosing the same must be sustained.—Affirmed.

WAGNER, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.